EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Andrés Sierra Quiñónes y Antonia Dávila Torres <br><br> Peticionaria <br><br> v. <br><br> Nilda Rodríguez Luciano <br><br> Recurrida | Certiorari <br><br> 2005 TSPR 9 <br><br> 163 DPR \_\_\_\_ |

Número del Caso: CC-2001-949

Fecha: 14 de febrero de 2005

Tribunal de Circuito de Apelaciones:

Circuito Regional IV

Panel integrado por su Presidenta, la Juez López Vilanova, el Juez Córdova Arone y la Juez Feliciano Acevedo

Abogados de la Parte Peticionaria:

Lcdo. Jorge L. Aquino Nuñez
Lcda. Ruth E. Aquino García

Abogado de la Parte Recurrida:

Lcdo. Gabriel García Maya

Materia: División de Comunidad

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Andrés Sierra Quiñones y
Antonia Dávila Torres

      Peticionarios

        v.

  Nilda Rodíguez Luciano

      Recurrida                  CC-2001-949  Certiorari

PER CURIAM

En San Juan, Puerto Rico, a 14 de febrero de 2005.

Los peticionarios, Andrés Sierra Quiñones y Antonia Dávila Torres y la sociedad legal de gananciales compuesta por ambos, solicitan la revisión de la resolución emitida el 19 de septiembre de 2001 por el Tribunal de Circuito de Apelaciones, mediante la cual se confirmó, en apelación, una resolución interlocutoria y una sentencia final dictadas por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. Mediante el primer dictamen, el foro de instancia declaró sin lugar una solicitud para enmendar las alegaciones de la demanda y mediante el segundo desestimó la demanda sobre "división de comunidad y enriquecimiento injusto."

Copia de la notificación de la resolución de la cual se recurre fue archivada en autos el 28 de septiembre de 2001. Una moción de reconsideración oportunamente presentada fue declarada "no ha lugar" mediante resolución del 16 de octubre de 2001, copia de cuya notificación fue archivada en autos el 24 de octubre de 2001.

I.

Andrés Sierra Quiñones y Antonia Dávila Torres, presentaron una demanda "sobre división de comunidad y enriquecimiento injusto" el 7 de mayo de 1998 en el Tribunal de Primera Instancia, Subsección de Distrito, Sala de Cabo Rojo. Alegaron que estaban casados entre sí; que el co-demandante Andrés Sierra Quiñones había conocido a la demandada, Nilda Rodríguez, en la ciudad de Nueva York; que "se relacionó sentimentalmente" con ella y que como resultado de esa relación, la señora Rodríguez Luciano le solicitó la cantidad de $50,000 para la compra de una propiedad situada en el Barrio Boquerón de Cabo Rojo. Expusieron que el 23 de septiembre de 1997, el señor Sierra Quiñones retiró el dinero en efectivo de una cuenta en el Banco Popular y lo depositó en una cuenta de la señora Rodríguez Luciano, quien, a su vez, adquirió la propiedad y otorgó la escritura correspondiente ante el Notario E. Del Toro Román. Los demandantes solicitaron la división de la comunidad de bienes alegadamente generada entre ellos y la demandada y que el tribunal ordenara a ésta que devolviera la cantidad de $50,000 aportados para la adquisición de la propiedad.

Después de ciertos procedimientos ante la Subsección de Distrito, Sala de Cabo Rojo, el caso fue trasladado a la Sala Superior de Mayagüez, el 23 de septiembre de 1999.

La demanda fue contestada el 14 de octubre de 1999. En lo esencial, la demandada señora Rodríguez Luciano negó que entre ella y los demandantes existiera una comunidad de bienes y que el señor Sierra Quiñones pudiera reclamar participación alguna en el inmueble adquirido por la señora Rodríguez Luciano.

El 4 de mayo de 2000, durante la "conferencia sobre el estado de los procedimientos," el tribunal le ordenó a las partes que sometieran memorandos de derecho sobre la posibilidad jurídica de que en el presente caso existiera una comunidad de bienes. La parte demandante presentó su memorando el 28 de junio de 2000 y la demandada lo hizo el 9 de agosto de 2000.

El 22 de febrero de 2001, los demandantes comparecieron por conducto de un nuevo representante legal y solicitaron autorización para enmendar las alegaciones de la demanda mediante la "radicación de demanda enmendada y ampliación de descubrimiento de prueba." La demanda "enmendada" propuesta no aduce causal alguna de división de comunidad y versa, estrictamente, sobre cobro de dinero y enriquecimiento injusto. Se reclaman, además, daños y perjuicios. La señora Rodríguez Luciano se opuso a la solicitud de los demandantes.

El 18 de mayo el Tribunal de Primera Instancia emitió dos dictámenes: una resolución en la cual denegó la solicitud de enmienda a la demanda y una sentencia desestimando la demanda original. Sometido el caso

oportunamente ante el entonces Tribunal de Circuito de Apelaciones, éste confirmó ambos dictámenes.

El 1 de noviembre de 2001, los esposos Sierra Quiñones y Dávila Torres presentaron una solicitud de certiorari en la que nos solicitan que revisemos la sentencia del tribunal apelativo y en consecuencia acojamos la demanda enmendada. Alegaron que el tribunal apelativo incidió al "confirmar la determinación del Tribunal de Primera Instancia que denegó a los peticionarios su solicitud de enmienda a las alegaciones de la demanda y [ampliación] [d]el término de descubrimiento de prueba" a pesar de que la parte demandada no levantó ningún señalamiento de perjuicio y tampoco el caso se encontraba "maduro" ya que las partes habían manifestado que no habían culminado con el descubrimiento de prueba. Alegaron, además, que erró el tribunal apelativo al confirmar la actuación del Tribunal de Primera Instancia en cuanto a que la parte demandante peticionaria no contaba con una causa de acción. Por último argumentaron que el tribunal recurrido erró al afirmar que las enmiendas propuestas a la demanda y a las alegaciones alteraban sustancialmente la causa de acción.

Examinada esta petición, ordenamos a la parte recurrida que nos mostrara causa por la cual no debíamos revocar la sentencia emitida por el entonces Tribunal de Circuito de Apelaciones. Habiendo comparecido ambas partes procedemos a resolver.

II.

El caso ante nuestra consideración presenta una controversia eminentemente procesal, en torno a la enmienda a las alegaciones de la parte demandante. En correcto ejercicio de adjudicación es necesario que, de entrada,

examinemos esta controversia a la luz de uno de los principios cardinales de nuestro procedimiento civil, que favorece que los casos se resuelvan en sus méritos.

En Rivera Santana v. Superior Packing, 132 DPR 115, 124 (1992), explicamos que hay una clara política pública judicial de que "los casos se ventilen en los méritos." Allí sostuvimos además, que existe un "importante interés de que todo litigante tenga su día en corte y que la parte no sea perjudicada por los actos y omisiones de su abogado." Esta preocupación por asegurar el derecho al día en corte nos ha llevado a interpretar, en el contexto de la Regla 36 de Procedimiento Civil, 32 LPRA Ap. III, R.36 (2003), que la disposición de un caso sumariamente sólo procede cuando el promovente ha establecido su derecho con claridad y ha quedado demostrado que la otra parte no tiene derecho a recobrar bajo cualquier circunstancia que resulte discernible de la prueba. *Véase* José A. Cuevas Segarra, Tratado de Derecho Procesal Civil 590 (2000), citando a Medina v. Merck, Sharp & Dohme 134 DPR 234 (1993).

Por otra parte, en el ámbito de la Regla 37.3 de Procedimiento Civil, que rige lo relacionado con las sanciones por incomparecencia, hemos reiterado que la desestimación como sanción es una medida sumamente drástica a la que sólo debe acudirse en casos extremos en los que no exista duda sobre la irresponsabilidad de la parte así sancionada. Hace ya cuatro décadas resolvimos que "[d]esestimar... una demanda... como medio de sanción... tiene el efecto de privar a un ciudadano de la función judicial de adjudicación que forma parte de nuestra estructura constitucional, privándole la oportunidad de **un día en corte** para hacer valer en los méritos la legitimidad de su derecho a reclamar...." Ramírez de Arellano v. Srio. de Hacienda, 85 DPR 828, 829 (1962) (énfasis

suplido). Véase además, <u>Díaz v. Tribunal Superior</u>, 93 DPR 79, 85; <u>Acevedo v. Compañía Telefónica de P.R</u>., 102 DPR 787 (1974) y <u>Garriga v. Maldonado</u>, 109 DPR 817, (1980).

En el contexto de las desestimaciones por insuficiencia de la prueba, Regla 39.2(c) de Procedimiento Civil, hemos resuelto de manera cónsona con lo antes expuesto. Así, hemos apuntado que no se debe desestimar una demanda por este fundamento, a menos que se "desprenda con toda certeza que el demandante no tiene derecho a remedio alguno, bajo cualquier estado de hechos que puedan ser probados en apoyo de su reclamación." <u>Reyes v. Sucn. Sánchez Soto</u>, 98 DPR 305,309 (1970). Frente a una moción de parte para desestimar una demanda, la acción debe ser interpretada lo más liberalmente posible a favor del reclamante: "La privación a un litigante de su día en corte es una medida procedente sólo en casos extremos." <u>Ortiz v. Nationwide Mutual Ins. Co</u>. 2003 TSPR 32, Op. de 4 de marzo de 2003,en la pág 2; <u>Metropolitana de Préstamos v. López de Victoria</u>, 141 DPR 844, (1996); <u>Candal v. CT Radiology Office</u>, <u>Inc</u>., 112 D.P.R. 227, 229 (1982); <u>Moa v. E.L.A.</u>, 100 D.P.R. 573, 582 (1972); <u>Martín Santos v. C.R.U.V</u>., 89 D.P.R. 175 (1963).

También hemos sostenido que nuestro procedimiento civil trasciende "la mística de las palabras." <u>Ruiz Santiago v. ELA</u>, 116 DPR 306, 309 n.2 (1985). En nuestro ordenamiento no existen requisitos sobre nomenclatura o formalismos lingüísticos como presupuestos para la validez de una petición legal. De hecho hemos sostenido que el nombre con que se denomina un recurso "no es determinante de su naturaleza" y no debe ser decisivo "desde el punto de vista de la función de hacer justicia," <u>Pueblo v. Ruiz Torres</u>, 127 DPR 612, 617 (1990). Véase Regla 70 de Procedimiento Civil (sobre la denominación o súplica

errónea). Es en este contexto que debemos interpretar la Regla 13.1 de Procedimiento Civil, 32 LPRA Ap. III, R. 13.1, que gobierna directamente la controversia ante nuestra consideración.

### III.

La Regla 13.1, supra, establece, en lo pertinente, que:

> Cualquier parte podrá enmendar sus alegaciones una vez en cualquier momento antes de haberle sido notificada una alegación respondiente... En cualquier otro caso las partes podrán enmendar su alegación únicamente con permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera...

Es decir, esta regla permite que una vez notificada una alegación respondiente, la demanda se enmiende, aunque únicamente con la autorización del tribunal o mediante consentimiento por escrito de la parte contraria. Asimismo, establece una clarísima directriz en cuanto a la concesión liberal de este remedio "cuando la justicia así lo requiera." Resulta evidente que la regla concede, en primer lugar, discreción al tribunal para determinar la procedencia de una enmienda a las alegaciones y, en segundo lugar, favorece su concesión.

Así lo ha interpretado nuestra jurisprudencia, según reconoce el comentarista José Cuevas Segarra quien señala que "[l]os estatutos que conceden discreción a los tribunales para autorizar enmiendas, dejar sin efecto actuaciones anteriores y otros actos similares para lograr justicia sustancial, son preceptos reparadores que deben interpretarse liberalmente." JOSÉ CUEVAS SEGARRA, TRATADO DE DERECHO PROCESAL CIVIL 314 (2000), citando a <u>Neca Mortgage v. A & W Dev.</u>, 137 DPR 860 (1995); <u>Ortiz</u>

<u>Díaz v. R. & R. Motors</u>, 131 DPR 829 (1992) y <u>Pérez Cruz v. Hospital de La Concepción</u>, 115 DPR 721 (1984).

En <u>Epifanio Vidal, Inc. v. Suro</u>, 103 DPR 793, 796 (1976), definimos el alcance de la liberalidad con la que debe concederse la autorización para enmendar las alegaciones y establecimos los criterios para su ejecución. Allí señalamos que:

> La liberalidad de la Regla 13.1 para conceder enmiendas no es infinita; está condicionada por un juicioso ejercicio de discreción que ha de ponderar por el momento en que se solicitan, su impacto en la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora e inacción original del promovente de la enmienda, el perjuicio que la misma causaría a la otra parte y hasta la naturaleza y méritos intrínsecos de la defensa que tardíamente se plantea.

Así, pues, son cuatro los elementos que deben considerarse para aplicar esta regla: 1) el impacto del tiempo transcurrido previo a la enmienda, 2) la razón de la demora, 3) el perjuicio a la otra parte, y 4) la procedencia de la enmienda solicitada. Es nuestro parecer que estos elementos no operan aisladamente, de modo que el paso del tiempo no impide, *ipso facto*, que el tribunal admita una enmienda. Tampoco resultaría sensato declarar sin lugar una petición de enmienda a las alegaciones por el solo hecho de que los procedimientos judiciales se encuentran en una etapa sustancialmente adelantada. Hemos abordado este último aspecto y hemos sostenido que los tribunales deben conceder el permiso para enmendar la demanda liberalmente, **"aún en etapas avanzadas de los procedimientos"** (énfasis suplido);. <u>Supermercado Grande v. Alamo</u>, 2002 TSPR 116, en la pág. 8, n.3; <u>Ortiz Díaz v. R. & R. Motors Sales Corp</u>., 131 DPR 829, 836 (1992); <u>Granados v. Rodríguez Estrada I</u>, 124 DPR 1, 43 (1989); <u>Pérez Cruz v. Hospital La Concepción</u>, 115 DPR 721, 737 esc.

4 (1984). De hecho, hemos considerado que se pueden realizar enmiendas en etapas tan avanzadas como la conferencia con antelación al juicio. Al respecto, hemos indicado que "la conferencia preliminar al juicio, cuyo propósito es simplificar los procedimientos, ofrece la oportunidad para que se sometan al tribunal posibles enmiendas a las alegaciones antes de la vista en su fondo." Ortiz Díaz, *supra* en la pag. 837.

La autorización para enmendar se deniega usualmente cuando "entraña un perjuicio indebido a la parte concernida, o cuando la petición se intenta enmendar en un momento irrazonable," Torres Cruz v. Municipio de San Juan 103 DPR 220 (1975). Asimismo, en el citado caso se indica que el ofrecimiento tardío de la enmienda no es suficiente de por sí para justificar la denegación del permiso, si no se ha causado perjuicio a la otra parte. Torres Cruz, supra, en la pág. 220, n. 1 (1975).

Cuevas Segarra señala que "cuando la propuesta demanda enmendada altera radicalmente el alcance y naturaleza del caso, con un consecuencial cambio, convirtiendo la controversia inicial en tangencial, el permiso para enmendar debe ser denegado." No obstante, a continuación añade lo siguiente: "[p]ero se pueden adicionar nuevas teorías y nuevas reclamaciones." El mismo autor parece explicar el alcance de estos comentarios al señalar que "[e]l cambio de teoría por sí sólo no es suficiente para denegar el permiso a menos que éste cause perjuicio al demandado". CUEVAS SEGARRA, *supra* en la pág. 316-317.

Ante una solicitud de autorización para enmendar las alegaciones, resulta especialmente importante evaluar el perjuicio que puede causarse a la parte contraria.

Ciertamente, éste debe ser el factor determinante, puesto que carece de importancia el tiempo que haya pasado desde la presentación original de la demanda o la naturaleza de la enmienda, si ésta resulta inocua a la justicia o a la parte contraria. Esto, más que restarle importancia a los demás elementos establecidos en Epifanio Vidal, Inc., *supra* realza la importancia de examinarlos en conjunto.

IV.

Es preciso, pues, examinar si a la luz del derecho expuesto el tribunal de instancia abusó de su discreción al no conceder la enmienda a las alegaciones solicitada por la parte demandante. Para ello, es necesario repasar algunos incidentes procesales previos a la determinación del Tribunal de Primera Instancia.

Durante la conferencia sobre el estado de los procedimientos celebrada el 4 de mayo de 2000, el tribunal ordenó a los abogados presentar memorandos de derecho "para que revisen si efectivamente en el presente caso hay causa de acción." La parte demandante presentó su

memorando el 28 de junio de 2000 y la demandada lo hizo el 9 de agosto de 2000. El 12 de enero de 2001 el abogado de la parte demandante presentó una moción de renuncia de representación legal y el 20 de febrero de 2001 se anunció una nueva representación legal de la parte demandante.

Dos días más tarde, la parte demandante presentó su "solicitud de enmienda a las alegaciones de la demanda mediante radicación de demanda enmendada y ampliación del término de descubrimiento de prueba." En esta petición señaló que la anterior representación legal de la parte demandante ... "no llevó a cabo trámites procesales de rigor para presentar una

representación legal adecuada." La parte demandante señaló además que coincidía con la parte demandada "a los efectos de que nunca ha existido una comunidad de bienes entre ella y la parte demandante."

En la demanda enmendada se alegó esencialmente que la demandada, bajo "treta y engaño," convenció al demandante que le "facilitara (le prestara)" la suma de $50,000. La demanda expande los hechos alegados en la demanda original, añadiendo detalles sobre la relación entre el co-demandante y la demandada. Asimismo, se añaden reclamaciones sobre otras sumas alegadamente adeudadas por la demandada, intereses sobre dichas sumas, daños y perjuicios y gastos de abogados.

La principal característica de la demanda enmendada es la ampliación en la discusión de los hechos relacionados a la entrega de los $50,000 por el co-demandante, señor Sierra Quiñones, a la demandada. Se explica que ambos se conocieron en la ciudad de Nueva York, que surgió una relación sentimental entre ellos y que en medio de dicha relación se realizaron varias transferencias patrimoniales del primero a favor de la segunda. Se alega que la demandada obtuvo el dinero del demandante bajo treta y engaño y tomó ventaja de él.

En términos de las alegaciones, la demanda enmendada propone una teoría legal distinta. Mientras que en la demanda original se solicitaba la división de una supuesta comunidad de bienes habida entre la sociedad legal de gananciales y la señora Rodríguez Luciano, en la demanda enmendada se solicita la devolución del dinero prestado (cobro de dinero). Se añade así un nuevo elemento subjetivo, la intención del co-demandante de entregar el dinero en calidad de préstamo. Ciertamente la teoría legal es sustancialmente distinta, pero

no varió en lo absoluto los hechos esenciales alegados desde que se inició el pleito, es decir, que el co-demandante realizó una sustancial trasferencia patrimonial a favor de la demandada, que dichos bienes eran gananciales y que los co-demandantes deseaban que se les devolviera el dinero traspasado.

Expuesto este trasfondo fáctico, analicémoslo conforme a los criterios establecidos en nuestra jurisprudencia. En primer lugar debemos señalar que el permiso para enmendar las alegaciones se solicitó dos años y nueve meses después de presentada la demanda original y un año y casi cuatro meses después de contestada la demanda. Sin embargo, durante casi un año el caso se mantuvo sujeto a la jurisdicción de la subsección del Tribunal de Distrito de Cabo Rojo, hasta que eventualmente fue trasladado a la sala Superior de Mayagüez. Por eso, a pesar del tiempo trascurrido el caso se encontraba en etapas bastante iniciales.

A diferencia de lo que señala el Tribunal de Apelaciones, el caso no estaba "sometido" cuando se solicitó autorización para enmendar las alegaciones. Según se desprende de las minutas y de la propia sentencia del tribunal de instancia, el caso se hallaba "sometido" únicamente en cuanto a la controversia sobre si existía una comunidad de bienes entre las partes, ante la realidad de que entre el codemandante y la demandada nunca hubo una relación de concubinato. Las partes sometieron memorandos de derecho para discutir este punto, no obstante lo cual el tribunal de instancia no resolvió dicha controversia, hasta que en su solicitud para enmendar la demanda, presentada seis meses después, la propia parte demandante, a través de una nueva representación legal, reconoció que no existía una comunidad de bienes entre la

sociedad de gananciales y la señora Rodríguez Luciano. El Tribunal de Primera Instancia se valió entonces de esa admisión para desestimar la demanda, ya que, a su entender "la razón de pedir no se justificaba."

En sus respectivas sentencias el Tribunal de Primera Instancia y el Tribunal de Apelaciones le dieron mucho peso a la opinión de Cuevas Segarra, quien señala, como dijimos anteriormente, que cuando la demanda enmendada altera radicalmente el alcance y naturaleza del caso, convirtiendo la controversia inicial en una tangencial, el permiso de enmienda debe negarse. Véase, José A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 316 (2000).

Evidentemente, los tribunales recurridos pasaron por alto el contexto en que se realiza dicho comentario y descartaron los criterios establecidos en <u>Epifanio Vidal Inc.</u>, *supra*. Recordemos que el perjuicio a la justicia y a las partes es el criterio rector al momento de autorizar o denegar una enmienda a las alegaciones. Recordemos además que éste criterio debe aplicarse de manera integral con los demás elementos expuestos en <u>Epifanio Vidal Inc.</u>, *supra*.

Nos parece que en este caso el mero transcurso del tiempo no impedía que el tribunal permitiera la enmienda a la demanda, sobretodo cuando la parte demandante no alegó que la misma le acarrearía perjuicio específico alguno. De cualquier modo, debemos señalar que la enmienda aquí solicitada no afectaba "sustancialmente" la reclamación original. Debemos recordar que las alegaciones iniciales de una demanda sirven para exponer a grandes rasgos cuales son las reclamaciones de la parte demandante a los fines de que la parte demandada quede notificada de los planteamientos en su contra. <u>Alamo v. Supermercado Grande, Inc.</u> 2002 TSPR 116 en la pág. 3; <u>Dorante</u>

v. Wrangler de Puerto Rico, 145 DPR 408, 413-414 (1988) y Reyes v. Cantera Ramos, Inc. 139 DPR 925, 929 (1996). De las alegaciones originales en este caso surgía claramente un hecho esencial: el codemandante Sierra Quiñones realizó una trasferencia sustancial de patrimonio ganancial, $50,000, a favor de la demandada y los co-demandantes reclamaban su devolución.

En cuanto a los méritos de la enmienda, basta decir que si los demandantes lograsen demostrar que la trasferencia patrimonial del señor Sierra Quiñones a la demandada señora Rodríguez Luciano se hizo en calidad de préstamo, tendrían una causa de acción justiciable, verbigracia, una acción en cobro de dinero.

V.

Hemos establecido que el tribunal de primera instancia no procedió conforme a derecho al no examinar la solicitud de enmiendas a las alegaciones a la luz de los criterios adoptados por este Tribunal. Asimismo consideramos que a la luz de éstos criterios, la falta de prueba sobre perjuicio a la justicia o las partes le impedían denegar la solicitud de enmienda. No debemos olvidar que el tribunal de instancia no sólo negó la enmienda a la demanda sino que desestimó la demanda *motu proprio*, aparentemente al entender que no existía un remedio en ley para esta controversia. En dicho sentido el tribunal erró también.  Veamos.

Recordemos que si bien el Artículo 93 del Código Civil de Puerto Rico, 31 LPRA sec. 286 (2003) permite el ejercicio unilateral de un cónyuge en actos de mera administración sobre bienes gananciales, los artículos 91 y 1313 del Código Civil, 31 LPRA secs. 284 y 3672 requieren el consentimiento de ambos cónyuges para disponer de los bienes comunes. Es decir, en Puerto Rico rige un sistema de coadministración de la sociedad de bienes gananciales. Se ha dicho que "el principio inspirador de igualdad jurídica entre los esposos... quedó plasmado en esos artículos, que establecen el sistema de disposición conjunta. El mismo requiere que los actos dispositivos sobre bienes gananciales sean el resultado de la decisión **mutua** de los cónyuges." I Raúl Serrano Geyls, Derecho de Familia de Puerto Rico y Legislación Comparada 426 (1997) (énfasis suplido).

El artículo 1313 del Código Civil, 31 LPRA 3672 (2003), establece que "ninguno de los dos [cónyuges] podrá donar, enajenar, ni obligar a título oneroso, los bienes muebles e inmuebles de la sociedad de gananciales sin el consentimiento escrito del otro cónyuge, excepto las cosas destinadas al uso

de la familia o personales de acuerdo con la posición social o económica de ambos cónyuges." Por otra parte el artículo 91 de Código Civil, 31 LPRA 284 (2003) dispone, en lo pertinente, que "los bienes inmuebles de la sociedad conyugal no podrán ser enajenados o gravados, bajo pena de nulidad, sino mediante el consentimiento escrito de ambos cónyuges."

Se observa que ambos artículos limitan considerablemente la capacidad individual de cada cónyuge para disponer de bienes gananciales. El Artículo 1313 se refiere a tanto a bienes muebles como inmuebles, mientras que el Artículo 91 se refiere únicamente a los bienes inmuebles. La diferencia fundamental entre estos dos artículos es que el 91 establece la nulidad como consecuencia de la contravención de su mandato, al tiempo que el Artículo 1313 sólo prohíbe que un cónyuge enajene los bienes sin autorización del otro. De esa forma, la enajenación sin autorización se convierte en un negocio jurídico meramente anulable y, por tanto, ratificable. Trabal Morales v. Ruiz Rodríguez, 125 DPR 340, 357 (1990). Al respecto, en Pérez Mercado v. Martínez Rondón, 130 DPR 134 (1992), se aclara, entre otras cosas, que "en el caso de un contrato otorgado por un cónyuge sin la comparecencia del otro –en la eventualidad de que el consentimiento de éste resulte indispensable– la única persona legitimada para impugnar dicho contrato será el cónyuge sin cuyo consentimiento se otorgó."

De lo anterior se desprende claramente que, a los efectos del Artículo 1313, los actos de donación o enajenación de uno de los cónyuges sin el consentimiento del otro son actos de administración anulables. Asimismo, la persona con legitimación activa para impugnar la validez de un acto de ese tipo es el cónyuge a quien no se le solicitó autorización.

Las alegaciones de la demanda original establecían una controversia de derecho susceptible de solución por el tribunal. Es decir, se planteaba que uno de los componentes de la sociedad de gananciales, el señor Sierra Quiñones, había enajenado, a título gratuito, una considerable cantidad de bienes muebles gananciales a un tercero, la demandada señora Rodríguez Luciano. La co-demandante, Antonia Dávila Torres, impugnaba esta enajenación. Siendo ella la persona con legitimación activa para impugnar la donación anulable de bienes de la sociedad conyugal, la demanda no se debió desestimar, al menos en lo que a ella y la sociedad de gananciales concernía.

Es nuestra opinión que el Tribunal de Primera Instancia debió examinar el presente caso a la luz de la doctrina aplicable a los casos de coadministración de la sociedad de gananciales. Más aún, consideramos que la enmienda propuesta por los demandantes era innecesaria, para efectos de mantener viva una controversia justiciable, toda vez que de la demanda original surgía una alegación de que el esposo había enajenado bienes conyugales sin autorización de su cónyuge.

Hacemos estos señalamientos en el contexto de la discusión sobre la decisión del tribunal de instancia de desestimar la demanda *motu proprio*, bajo el fundamento de que ya no existía una razón de pedir. Nos parece evidente que el tribunal sentenciador debió examinar todas las posibles reclamaciones deducibles de los hechos inicialmente alegados.

VI.

Concluimos que el Tribunal de Primera Instancia abusó de su discreción, al no evaluar la procedencia de la solicitud de enmienda a la demanda de acuerdo a los criterios

establecidos por la jurisprudencia. Asimismo, erró al desestimar la demanda sin atender todas las posibles reclamaciones que surgían de los hechos alegados en la demanda original. De igual forma erró el foro apelativo, al confirmar el proceder del foro de instancia.

Por los fundamentos antes expuestos se revoca la resolución recurrida y por consiguiente, la resolución interlocutoria y la sentencia final dictadas por el Tribunal de Primera Instancia, Sala Superior de Mayagüez. Se autorizan las enmiendas a las alegaciones según solicitadas por los demandantes y se devuelve el caso al foro de instancia para la continuación de los procedimientos.

Se dictará sentencia de conformidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Andrés Sierra Quiñones y
Antonia Dávila Torres

      Peticionarios

        v.

  Nilda Rodríguez Luciano

      Recurrida               CC-2001-949  Certiorari


SENTENCIA

En San Juan, Puerto Rico, a 14 de febrero de 2005.

Por los fundamentos expuestos anteriormente, los cuales se hacen formar parte integral de la presente, se revoca la resolución recurrida y por consiguiente, la resolución interlocutoria y la sentencia final dictadas por el Tribunal de Primera Instancia, Sala de Mayagüez. Además, se autorizan las enmiendas a las alegaciones según solicitadas por los demandantes y se devuelve el caso al foro de instancia para la continuación de los procedimientos.

Lo acordó el Tribunal y certifica la Secretaria del Tribunal Supremo.


              Aida Ileana Oquendo Graulau
              Secretaria del Tribunal Supremo