Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VIII

| | | |
|---|---|---|
| GEORGE NELSON RAMOS HERNÁNDEZ (REPRESENTADO POR SU ESPOSA DIGNA JAQUELINE CONTRERAS MÉNDEZ) <br><br> AUREA NELBA RAMOS HERNÁNDEZ <br><br> RECURRIDOS <br><br> v. <br><br> MARÍA SOLEDAD BLAS RAMOS, ET. ALS. <br><br> PETICIONARIOS | TA2025CE00643 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Aguadilla <br><br> Caso Núm. AG2023CV00722 <br><br> Sobre: Acción Civil |

Panel integrado por su presidenta, la Juez Lebrón Nieves, el Juez Pagán Ocasio y la Jueza Álvarez Esnard.

Pagán Ocasio, juez ponente

# RESOLUCIÓN

En San Juan, Puerto Rico, a 31 de octubre de 2025.

## I.

El 20 de octubre de 2025, la señora María Soledad Blas Ramos, la señora Stephanie Negrón Blas y el señor Marc Anthony Negrón Blas (en conjunto, parte peticionaria) presentaron digitalmente un recurso de *Certiorari* en el que nos solicitaron que revoquemos la *Resolución* emitida por el Tribunal de Primera Instancia, Sala Superior de Aguadilla (TPI o foro primario), el 20 de agosto de 2025, notificada y archivada digitalmente en autos el mismo día. [1] Mediante dicho dictamen, el TPI, en reconsideración, autorizó las enmiendas a la demanda presentadas por la parte recurrida y, consecuentemente, aceptó la *Tercera Demanda Enmendada.*

---

[1] Véase Entrada Núm. 159 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Primera Instancia (SUMAC-TPI).

El 21 de octubre de 2025, emitimos una *Resolución* en la que le concedimos un término a la parte recurrida para expresarse respecto a los méritos del recurso.[2]

Al día siguiente, el señor George Nelson Ramos Hernández (parte recurrida) presentó un *Alegato Parte Recurrida George Nelson Ramos Hernández,* en el que solicitó que deneguemos la expedición del recurso.[3] Posteriormente, el 29 de octubre de 2025, éste presentó una *Moción en cumplimiento de orden,* en la que reiteró su oposición a la expedición del recurso.[4]

Contando con el beneficio de la comparecencia de las partes, pormenorizamos los hechos procesales más relevantes para la atención del recurso.

**II.**

El caso de marras tuvo su génesis el 10 de mayo de 2023, cuando la parte recurrida presentó una *Demanda* sobre liquidación y división del caudal hereditario de Don Randolfo Ramón Fuentes (causante) y sobre daños y perjuicios.[5] En síntesis, alegó que, luego del fallecimiento del causante, la señora María Soledad Blas Ramos (señora Blas Ramos), heredera y albacea, llevó a cabo acciones en detrimento de los demás herederos, incurriendo en gastos de los fondos del caudal y reduciéndolo significativamente, en perjuicio de la parte recurrida. Según las alegaciones, la señora Blas Ramos se apropió de bienes pertenecientes al causante cuando era su apoderada y no ha rendido cuentas del manejo de dichos bienes, a pesar de los múltiples requerimientos. Por lo cual, la parte recurrida solicitó que se condene a la señora Blas Ramos a la devolución de los fondos utilizados indebidamente y al pago de una indemnización por concepto de daños y perjuicios.

---

[2] Véase Entrada Núm. 3 del expediente digital del caso en el Sistema Unificado de Manejo y Administración de Casos del Tribunal de Apelaciones (SUMAC-TA).
[3] Íd., Entrada Núm. 2.
[4] Íd., Entrada Núm. 4.
[5] Véase Entrada Núm. 1 en SUMAC-TPI.

Posteriormente, el 17 de julio de 2023, la parte recurrida presentó una *Demanda Enmendada*, en la que incluyó como demandados a la señora Stephanie Negrón Blas y al señor Marc Anthony Negrón Blas, hijos de la señora Blas Ramos, quienes se convirtieron en herederos del causante por el repudio de ésta última a la herencia.[6]

El 3 de agosto de 2023, la señora Blas Ramos presentó una *Contestación a Demanda* en la que negó que haya ocasionado daños y perjuicios, y que se haya apoderado de bienes pertenecientes al caudal hereditario, en violación a sus deberes como apoderada.[7]

Por otra parte, el 29 de agosto de 2023, los señores Stephanie Negrón Blas y Marc Anthony Negrón Blas, presentaron una *Contestación a Demanda y Reconvención*.[8] En esta, negaron que la señora Blas Ramos haya tomado acción alguna sobre los bienes del causante y que haya tomado acciones en detrimento de los demás herederos. Mediante la *Reconvención*, solicitaron la partición de la comunidad hereditaria que junto a la parte recurrida conforman.[9]

El 6 de octubre de 2023, la parte recurrida presentó una *Contestación a Reconvención* en la que arguyó que el pleito, precisamente, busca la liquidación de la herencia, la cual no se ha llevado a cabo por las actuaciones de la señora Blas Ramos.[10]

El 31 de octubre de 2023, la parte recurrida presentó una *Solicitud de autorización para radicar Segunda Demanda Enmendada*, para corregir la acumulación de la señora Aura Nelba Ramos Hernández (madre de la señora Blas Ramos) como demandada y no como demandante.[11] En cuanto a ésta última, a

---

[6] Véase Entrada Núm. 19 en SUMAC-TPI.
[7] Véase Entrada Núm. 26 en SUMAC-TPI.
[8] Véase Entrada Núm. 32 en SUMAC-TPI.
[9] Íd.
[10] Véase Entrada Núm. 46 en SUMAC-TPI.
[11] Véase Entrada Núm. 62 en SUMAC-TPI.

solicitud de la parte recurrente, el 22 de mayo de 2024, el TPI le anotó la rebeldía.[12]

Tras varios trámites procesales, el 1 de abril de 2025, el TPI celebró mediante videoconferencia una Vista transaccional.[13] Según surge de la *Minuta,* entre otras cosas, la parte recurrida expresó la posibilidad de enmendar la demanda para impugnar el testamento y hacer alegaciones en cuanto al manejo y retiro de fondos de la cuenta del causante. A esos efectos, el TPI le concedió un término de veinte (20) días a la parte recurrida para que lo solicitara por escrito y veinte (20) días a la parte peticionara para oponerse.

El 25 de abril de 2025, la parte recurrida presentó una *Moción solicitando permiso para enmendar demanda.*[14] En síntesis, alegó que durante el descubrimiento de prueba surgió nueva información que fundamenta la necesidad de presentar una Tercera Demanda Enmendada. Esto, para incluir nuevas causas de acción por fraude, nulidad de poder duradero, nulidad de testamento y apropiación ilegal de fondos, que permitirá que todas las reclamaciones se ventilen en un solo procedimiento, promoviendo la eficacia judicial y evitando fallos contradictorios.

Por su parte, el 21 de mayo de 2025, la parte peticionaria presentó una *Oposición a "Moción solicitando permiso para enmendar demanda".*[15] En esta, arguyó que la parte recurrida pretende cambiar el caso y añadir causas de acción, luego de dos (2) años de iniciado el pleito, que pudo incluir cuando presentó la Demanda original. Alegó que permitir la enmienda alteraría la naturaleza del pleito y causaría grave perjuicio a la parte peticionaria.

---

[12] Véase Entradas Núm. 98 y 99 en SUMAC-TPI.
[13] Véase Entrada Núm. 132 en SUMAC-TPI, *Minuta* de la vista celebrada.
[14] Véase Entrada Núm. 133 en SUMAC-TPI.
[15] Véase Entrada Núm. 139 en SUMAC-TPI.

El 27 de mayo de 2025, la parte recurrida presentó una *Réplica a la Oposición a "Moción solicitando permiso para enmendar demanda"* en la que reafirmó que la Tercera Demanda Enmendada no altera sustancialmente la naturaleza del pleito, sino que aclara y fortalece las alegaciones originales, a la luz de la información obtenida durante el descubrimiento de prueba.[16]

El 27 de mayo de 2025, la parte peticionaria presentó una *Breve Dúplica a Réplica a la Oposición a "Moción solicitando permiso para enmendar demanda"* para reiterar su oposición a las enmiendas propuestas.[17]

El 15 de julio de 2025, el TPI emitió una *Resolución* en la que declaró Ha Lugar la solicitud de enmiendas propuestas por la parte recurrida, únicamente en cuanto a la causa de acción sobre nulidad de testamento y las causas de acción sobre fraude y apropiación de fondos, por hechos ocurridos durante la existencia de la comunidad hereditaria, el albaceazgo o su administración.[18] En consecuencia, declaró No Ha Lugar la solicitud de enmiendas a las alegaciones en cuanto a la nulidad de poder duradero, fraude y apropiación ilegal de fondos por hechos ocurridos previo a la existencia de la comunidad hereditaria.

Oportunamente, el 22 de julio de 2025, la parte recurrida presentó una *Moción de Reconsideración Parcial.*[19] Expuso que las alegaciones sobre el poder duradero y las actuaciones de la señora Blas Ramos como apoderada antes del fallecimiento del causante permanecen incorporadas tras haber sido incluidas en *la Segunda Demanda Enmendada* del 30 de octubre de 2023, que el TPI

---

[16] Véase Entrada Núm. 140 en SUMAC-TPI.
[17] Véase Entrada Núm. 141 en SUMAC-TPI.
[18] Véase Entrada Núm. 151 en SUMAC-TPI. Notificada y archivada digitalmente en autos el 16 de julio de 2025.
[19] Véase Entrada Núm. 152 en SUMAC-TPI.

previamente aceptó. Por ello, le solicitó al foro primario que reconsiderara su determinación parcialmente.

Por su parte, el 5 de agosto de 2025, la parte peticionaria presentó una *Oposición a "Moción de Reconsideración Parcial* en la cual arguyó que el foro primario actuó correctamente al instruir a la parte recurrida a presentar un pleito independiente si deseaba incluir las referidas alegaciones sobre fraude, nulidad del poder y apropiación ilegal.[20]

Ese mismo día, la parte recurrida presentó una *Réplica a Oposición a Moción de Reconsideración Parcial* en la que reiteró que las alegaciones sobre las actuaciones de la señora Blas Ramos como apoderada no desnaturalizan el pleito, sino que constituyen el fundamento central de la reclamación desde que se presentó la *Segunda Demanda Enmendada.*[21]

El 20 de agosto de 2025, el TPI emitió una *Resolución* en la que reconsideró su determinación previa y autorizó las enmiendas a la demanda según solicitadas.[22] En particular, concluyó que dichas enmiendas no tienen el efecto de transformar sustancialmente las causas de acción de la demanda original y la naturaleza del procedimiento. Tras un análisis de la totalidad del expediente, el foro primario entendió que las actuaciones de la señora Blas Ramos, como apoderada, son elementos de la demanda que están presentes desde el inicio, toda vez que se solicitaron remedios concretos y específicos sobre dichos asuntos. En virtud de lo anterior, el 25 de agosto de 2025, el TPI emitió una *Orden* en la que aceptó la *Tercera Demanda Enmendada.*[23]

---

[20] Véase Entrada Núm. 154 en SUMAC-TPI.
[21] Véase Entrada Núm. 155 en SUMAC-TPI.
[22] Véase Entrada Núm. 159 en SUMAC-TPI.
[23] Véase Entrada Núm. 161 en SUMAC-TPI.

En desacuerdo, el 1 de septiembre de 2025, la parte peticionaria presentó una *Moción de Reconsideración*.[24] Alegó que la enmienda tardía altera sustancialmente la teoría del caso tras años de litigio y manejo del calendario; le impone a la parte peticionaria la necesidad de reabrir el descubrimiento de prueba, replantear defensas y estrategias ya articuladas; y que provoca gastos y dilaciones. Además, arguyó que el TPI no realizó determinaciones específicas sobre justa causa, dilación, futilidad o perjuicio, como tampoco adoptó salvaguardas para mitigar el daño procesal.

El 2 de septiembre de 2025, la parte recurrida presentó una *Réplica a Moción de Reconsideración (162)*.[25] En esta, reiteró que las alegaciones sobre la apropiación indebida de fondos y mal manejo del caudal por parte de la señora Blas Ramos no son nuevas, sino que han sido consistentes a lo largo de todas las versiones de la demanda. Añadió que los requerimientos hechos a la parte recurrida como parte del descubrimiento de prueba han ido dirigidos inequívocamente a que la señora Blas Ramos responda sobre sus actuaciones como apoderada del causante y justifique las reducciones en el caudal del causante.

El 18 de septiembre de 2025, el TPI emitió una *Resolución* en la que declaró No Ha Lugar la *Moción de Reconsideración* presentada por la parte peticionaria, por lo que ordenó la continuación de los procedimientos.[26] El foro primario reafirmó que la enmienda solicitada no representa un cambio sustancial en la naturaleza, ni en la teoría original del caso. Además, expuso que la parte peticionaria no puso al tribunal en posición de concluir que la dilación o gastos adicionales que puedan surgir en el procedimiento

---

[24] Véase Entrada Núm. 162 en SUMAC-TPI.
[25] Véase Entrada Núm. 163 en SUMAC-TPI.
[26] Véase Entrada Núm. 166 en SUMAC-TPI. Notificada y archivada digitalmente en autos el 19 de septiembre de 2025.

derrotan la libertad con la que deben permitirse las enmiendas a la demanda, aun en etapas avanzadas del pleito.

Inconforme con la determinación del TPI, el 20 de octubre de 2025, la parte peticionaria acudió ante esta Curia mediante el recurso de *certiorari* de epígrafe y formuló el siguiente señalamiento de error:

> **Erró el TPI y abusó de su discreción al permitir, tras concluir el descubrimiento y estando el caso listo para juicio, una enmienda que alteró sustancialmente el pleito.**

Es su contención que la determinación del TPI es contraria a derecho puesto que permite una enmienda a la demanda para incluir nuevas causas de acción, luego de culminado el descubrimiento de prueba, sin justificación alguna. Arguyó que la Tercera Demanda Enmendada alteró la naturaleza de la controversia. Por ello, alegó que el foro primario se excedió de su discreción.

Por su parte, el 22 de octubre de 2025, la parte recurrida presentó un *Alegato parte recurrida George Nelson Ramos Hernández*. Sostuvo que las alegaciones son sustancialmente las mismas, solo que más detalladas y elaboradas. En particular, adujo que las alegaciones sobre las actuaciones de la demanda como apoderada y su consecuente apropiación ilegal de fondos, que ocasionaron una merma del caudal hereditario, se han mantenido desde la presentación de la demanda inicial. Asimismo, arguyó que las alegaciones de nulidad del poder duradero y del testamento surgen del descubrimiento de prueba y de las gestiones que la parte recurrida tuvo que hacer ante la negativa de proveer la información solicitada sobre el estado de salud del causante.

En adelante, pormenorizaremos el derecho aplicable al presente recurso.

**III.**

**A.**

El auto de *certiorari* es un remedio procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. ***Medina Nazario v. McNeil Healthcare LLC***, 194 DPR 723, 728 (2016). Véase, además, ***IG Builders et al v. BBVAPR***, 185 DPR 307, 337 (2012). A diferencia de una apelación, el tribunal de superior jerarquía tiene la facultad de expedir el auto de *certiorari* de forma discrecional. ***Rivera Figueroa v. Joe's European Shop***, 183 DPR 580, 596 (2011).

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R.52.1,[27] establece las instancias en las que el foro revisor posee autoridad para expedir un auto de *certiorari* sobre materia civil. ***Scotiabank v. ZAF Corp. et al.,*** 202 DPR 478 (2019). La citada regla delimita el alcance jurisdiccional del Tribunal de Apelaciones para atender un recurso de *certiorari* que se trate sobre la revisión de dictámenes interlocutorios del Tribunal de Primera Instancia. ***Mun. Caguas v. JRO Construction, Inc.***, 201 DPR 703 (2019).

Si el auto sobre el cual versa el recurso de *certiorari* está comprendido en una de las instancias establecidas en la Regla 52.1 de Procedimiento Civil, *supra,* debemos pasar entonces a un

---

[27] Esta Regla dispone que:

El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios (sic), anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. Al denegar la expedición de un recurso de *certiorari* en estos casos, el Tribunal de Apelaciones no tiene que fundamentar su decisión.

Cualquier otra resolución u orden interlocutoria expedida por el Tribunal de Primera Instancia podrá ser revisada en el recurso de apelación que se interponga contra la sentencia sujeto a lo dispuesto en la Regla 50 sobre los errores no perjudiciales.

segundo análisis. El mismo se caracteriza por la discreción que ha sido conferida al Tribunal de Apelaciones para autorizar, expedir y adjudicar en sus méritos el caso.

Con el fin de que podamos ejercer de manera sabia y prudente nuestra facultad discrecional, la Regla 40 del Reglamento del Tribunal de Apelaciones, ***In re Aprob. Enmdas. Reglamento TA***, 2025 TSPR 42, págs. 59-60, 215 DPR __ (2025), establece los criterios que debemos tomar en consideración al atender una solicitud de expedición de un auto de *certiorari*.[28]

**B.**

Según establece la Regla 1 de Procedimiento Civil, *supra*, R. 1, las Reglas de Procedimiento Civil deben ser interpretadas de forma que "faciliten el acceso a los tribunales y el manejo del proceso, de forma que garanticen una solución justa, rápida y económica". Siguiendo ese mismo espíritu, nuestro Tribunal Supremo ha delineado una clara política pública de que los casos deben ventilarse en los méritos. ***Colón Rivera v. Wyeth Pharm.,*** 184 DPR 184, 198 (2012); ***Rivera et al. v. Superior Pkg, Inc. et al.,*** 132 DPR 115, 124 (1992).

Por lo anterior, en el contexto de las enmiendas a las alegaciones, tanto las Reglas de Procedimiento Civil, *supra*, como la

---

[28] Esta Regla dispone lo siguiente:
> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.
> (F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.
> (G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

doctrina interpretativa favorecen su autorización. Regla 13.1 de Procedimiento Civil, *supra,* R. 13.1; **Colón Rivera v. Wyeth Pharm.,** supra; **S.L.G. Font Bardón v. Mini-Warehouse,** 179 DPR 322 (2010). En concreto, la Regla 13.1 de Procedimiento Civil, *supra,* R. 13.1, dispone lo siguiente:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva, o si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. **En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera.** La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal de otro modo lo ordene. (Énfasis nuestro).

Así, esta Regla establece una directriz respecto a la concesión liberal de este remedio, disponiendo que se procede autorizarlo "cuando la justicia así lo requiera". **S.L.G. Sierra v. Rodríguez,** 163 DPR 738, 747 (2005). Además, faculta al tribunal con discreción para determinar la procedencia de la enmienda a las alegaciones y, como norma general, favorece que se conceda. Íd.

Para guiar a los tribunales en la evaluación de solicitudes para enmendar las alegaciones, nuestro más alto foro ha diseñado los siguientes criterios: (1) el impacto del tiempo transcurrido previo a la enmienda; (2) la razón de la demora; (3) el perjuicio a la otra parte y (4) la procedencia de la enmienda solicitada. **León Torres v. Rivera Lebrón**, 204 DPR 20, 35-36 (2020); **S.L.G. Font Bardón v. Mini-Warehouse**, supra, pág. 334; **S.L.G. Sierra v. Rodríguez**, supra, pág. 748. Estos criterios deben ser analizados en conjunto. **S.L.G. Sierra v. Rodríguez**, supra, págs. 749-750. Sin embargo, el factor más importante, determinante y de mayor relevancia es el

perjuicio indebido que la enmienda pueda causar a la parte contraria, sin que ello signifique que los demás elementos no deban ser considerados. ***Colón Rivera v. Wyeth Pharm***., supra, pág. 204; ***S.L.G. Sierra v. Rodríguez***, supra, pág. 750.

En ese análisis, debe considerarse que ocurre un perjuicio indebido cuando la enmienda: "(1) cambia sustancialmente la naturaleza y el alcance del caso, convirtiendo la controversia inicial en tangencial, o (2) obliga a la parte contraria a incurrir en nuevos gastos, alterar su estrategia en el litigio o comenzar nuevo descubrimiento de prueba". ***Colón Rivera v. Wyeth Pharm***., supra, pág. 204. Por eso, se ha teorizado que el perjuicio debe ser indebido en el "sentido de que coloque a la parte contraria en una situación de desventaja respecto a lo que es el trámite ordenado del litigio". Íd., pág. 200, citando a W. Vázquez Irizarry, *Procedimiento Civil*, 75 Rev. Jur. UPR 175, 197 (2006).

Por el contrario, un mero cambio de teoría en las alegaciones no constituye perjuicio indebido. ***S.L.G. Font Bardón v. Mini-Warehouse,*** supra, pág. 336. Asimismo, el tiempo transcurrido entre la presentación de la *Demanda* original y la enmienda propuesta, por sí solo, tampoco causa perjuicio indebido. ***Colón Rivera v. Wyeth Pharm***., supra, pág. 199; ***S.L.G. Sierra v. Rodríguez,*** supra, pág. 749.

### IV.

En el caso de marras, la parte peticionaria nos solicita que revoquemos la determinación del TPI que permitió una Tercera Demanda Enmendada para alegadamente incluir nuevas causas de acción cuando el descubrimiento de prueba había concluido y el caso estaba listo para la Conferencia con Antelación Juicio y las cuales alterarían sustancialmente la naturaleza del pleito.

Mediante un dictamen previo, el TPI rechazó las enmiendas a las alegaciones sobre las actuaciones de la señora Blas Ramos, como

apoderada, con anterioridad al fallecimiento del causante. Posteriormente, reconsideró su dictamen y concluyó que, en efecto, las alegaciones originales de la demanda contienen elementos de una causa de acción sobre dichas actuaciones de la señora Blas Ramos con anterioridad al fallecimiento del causante, por lo que coincidió con la parte recurrida en que estas no tienen el efecto de transformar sustancialmente el pleito. A esos efectos, permitió la enmienda.

En desacuerdo, la parte peticionaria alegó mediante el recurso de epígrafe que el TPI abusó de su discreción al permitir dicha enmienda, pues sostuvo que alteró la controversia.

Por su parte, la parte recurrida manifestó que el TPI actuó correctamente al permitir las enmiendas y que el descubrimiento de prueba en curso demuestra que la naturaleza del caso ha sido la misma desde el inicio. Por ello, alegó que el foro primario ejerció válidamente su discreción. Según ésta, la enmienda no representa dilaciones puesto que el caso aun no estaba listo para juicio y existe la necesidad de ampliar el descubrimiento de prueba.

Tras un análisis objetivo, sereno y cuidadoso del expediente, en correcta práctica adjudicativa apelativa, a la luz de los criterios esbozados en la Regla 52.1 de Procedimiento Civil, *supra*, y en la Regla 40 del Reglamento del Tribunal de Apelaciones, *supra*, resolvemos que procede denegar el auto de *Certiorari*. Un examen sosegado del expediente del caso ante nuestra consideración y de la determinación recurrida, no arroja que el TPI haya incurrido en error, prejuicio, parcialidad o que haya abusado de su discreción. Se trata de un asunto del manejo del caso por el TPI.

**V.**

Por los fundamentos pormenorizados, se deniega la expedición del auto de *Certiorari*.

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones