Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL IX

| | | |
|---|---|---|
| DR. NOEL SANTOS MONTES Y DR. RAÚL RIVERA DE LA VEGA<br><br>Peticionarios<br><br>V.<br><br>HOSPITAL DOCTOR SUSONI, INC. Y OTROS<br><br>Recurridos | KLCE202401270 | *Certiorari* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Caso Núm.: AR2020CV01571<br><br>Sobre: Derecho de Avalúo |

Panel integrado por su presidente, el Juez Rodríguez Casillas, Juez Marrero Guerrero y Juez Campos Pérez.

Marrero Guerrero, Juez Ponente

## RESOLUCIÓN

En San Juan, Puerto Rico, a 13 de enero de 2025.

Comparecen ante nos el doctor Noel Santos Montes (Dr. Santos Montes) y el doctor Raúl Rivera De La Vega (Dr. Rivera De La Vega) (en conjunto, peticionarios) mediante un recurso de *certiorari* en el que solicitan revisar una *Orden* emitida el 22 de octubre de 2024 por el Tribunal de Primera Instancia, Sala Superior de Arecibo (TPI o Foro Primario).[1] Mediante el referido dictamen, el TPI denegó la cuarta solicitud de enmienda a la *Demanda* presentada contra el Hospital Doctor Susoni, Inc. y su Junta de Directores (en conjunto, Hospital Doctor Susoni o recurridos). Además, el Foro Primario consignó que, en la etapa que se encontraba el caso, únicamente se sostenía la causa de acción de derecho de avalúo como accionistas minoritarios del Hospital Doctor Susoni.

Por los fundamentos que se exponen a continuación, se adelante la denegación de la expedición del auto solicitado.

Veamos el trasfondo fáctico y procesal atinente a este recurso.

_____

[1] Apéndice de *Certiorari*, Anejo I, pág. 1. Archivada y notificada el 23 de octubre de 2024.

**I.**

La controversia ante nuestra consideración se originó el 18 de diciembre de 2020, fecha en que el Dr. Santos Montes y el Dr. Rivera De La Vega presentaron una *Demanda* contra el Hospital Doctor Susoni sobre acción derivativa y derecho a avalúo.[2] Mediante esta, los peticionarios adujeron que las juntas de directores de Metro Pavía Hospital Group, LLC (MPHG); Metro Pavía Health System, Inc.; Metro Santurce, Inc.; Metro Hato Rey, Inc.; Metro Mayagüez, Inc.; San Francisco Health System, Inc.; Doctor Susoni Community Health Services, Corp.; Artua Holdings, LLC y del Hospital Doctor Susoni (en conjunto, operadores) aprobaron un financiamiento y refinanciamiento de deuda para ciertas mejoras de capital. A saber, indicaron que las referidas juntas de directores acordaron obtener un préstamo por la cantidad de $187,000,000.00 con Berkadia Commercial Mortgage, LLC y una línea de crédito de $10,000,000.00 con FirstBank Puerto Rico. Los peticionarios alegaron que el Departamento de Vivienda y Desarrollo Urbano de Estados Unidos (HUD) requirió que los operadores realizaran una reorganización corporativa para transferir todos los activos inmobiliarios a MPHG, a cambio de convertirse en los únicos socios de esta corporación. Asimismo, arguyeron que los operadores suscribieron un contrato de arrendamiento y operación, en el que se obligaron a pagar una renta para operar los hospitales en las propiedades que cedieron a MPHG. Igualmente, subrayaron que los operadores se obligaron a pagar a MPHG por servicios de consultoría. Además, puntualizaron que los operadores autorizaron garantizar el financiamiento con todas sus propiedades, equipos, ingresos, activos y cuentas de depósitos. Por otro lado, sostuvieron que los operadores autorizaron al señor Eduardo Artau Gómez, a la señora Karen Z. Artau Feliciano y al señor

---

[2] *Íd.*, Anejo II, págs. 2-29.

Héctor Galarza Correa a actuar por las corporaciones para ejecutar el Acuerdo de Reorganización y comparecer en el otorgamiento de escrituras, acuerdos de arrendamiento y consultoría. Del mismo modo, acentuaron que los operadores autorizaron adaptar la forma, los términos y las provisiones de los Certificados de Enmiendas a los Certificados de Incorporación.

Los peticionarios concretaron que el 21 de febrero de 2020, el señor Ángel M. Álvarez De Jesús, director de operaciones del Hospital Doctor Susoni cursó una oferta de compraventa de acciones al Dr. Rivera de la Vega por la suma de $364,891.66 y al Dr. Santos Montes por $411,962.68. Por ello, arguyeron que el Dr. Santos Montes presentó un requerimiento de información que nunca se contestó.

Asimismo, destacaron que el 31 de julio de 2020, se incorporó HDSI Merger Sub, Inc., con el propósito de fusionar dicha corporación con el Hospital Doctor Susoni. Los peticionarios precisaron que el señor Artau Gómez certificó en la Certificación de Fusión que HDSI Merger Sub, Inc. era dueño de 291.40136 acciones del Hospital Doctor Susoni. A su vez, señalaron que el señor Artau Gómez certificó lo siguiente:

> "…(a) all the issued and outstanding shares of capital stock of HDSI on the Effective Date of the Merger held by the share[h]olders of the Company on such date (the Majority Shareholder(s)") shall be exchanged for all shares of HDSI held by the Company on the Effective Date, at an exchange rate [equal] to 0.29 shares of HDSI for each share of common stock of the Company upon the surrender thereof by the Majority Shareholders to the Company of duly endorsed certificates of Company stock, and (b) all of the issued and outstanding shares of capital stock of HDSI owned by all share[h]olders of HDSI other than the share[h]olders of the Company on the Effective Date of the Merger (the "Minority Share[h]olders") shall be cancelled, and each Minority Shareholder shall be paid an amount equal to $283,451.00 per share for each share of HDSI owned by such Minority Shareholder upon the surrender…"

Ante ello, los peticionarios especificaron que el 25 de agosto de 2020, el señor Artau Gómez les envió un *Notice of Merger and Appraisal Rights.* Por otro lado, esgrimieron que el plan para fusionar las corporaciones tenía el objetivo de exprimir a los peticionarios

como accionistas minoritarios del Hospital Doctor Susoni, mediante el control y dominio absoluto de los accionistas mayoritarios. Por lo que, indicaron que el 11 de septiembre de 2020, solicitaron infructuosamente su derecho a avalúo.

Según las alegaciones de la *Demanda*, la fusión incumplió con el estándar de justicia intrínseca del deber de fiducia en protección de los accionistas minoritarios, además que su objetivo final era que MPHG obtuviera el control absoluto del Hospital Doctor Susoni para hipotecar el bien inmueble donde opera el hospital. Los peticionarios plantearon que dicha acción constituyó una falsa representación, un *self-dealing*, desperdicio deliberado de los activos y extralimitación de sus poderes. Por lo anterior, solicitaron decretar nulo e inválido el acuerdo de financiamiento con garantía hipotecaria con Berkadia Commercial Mortgage LLC y FirstBank Puerto Rico y cualquier otro acreedor aprobado por la junta de directores del Hospital Doctor Susoni; ordenar la paralización de cualquier trámite, transferencia de bienes inmuebles y/o activos, reorganización corporativa, y dejar sin efecto cualquier resolución corporativa y/o autorización de la junta de directores relacionada al acuerdo de financiamiento. Adicionalmente, el Dr. Rivera De La Vega y el Dr. Santos Montes solicitaron $1,500,000.00 y $2,000,000.00, respectivamente, para ceder sus acciones, más el pago de dividendos. Los peticionarios se reservaron el derecho de enmendar sus alegaciones para incluir causas de acción o remedios a medida que surgieran en el descubrimiento de prueba.

Tras varios trámites procesales, el 3 de marzo de 2021, los peticionarios presentaron la *Primera Enmienda a la Demanda*.[3] En esta, alegaron que un comité independiente debió atender la reorganización corporativa y fusión del Hospital Doctor Susoni con

---

[3] *Íd.*

HDSI Merger Sub, Inc., por el conflicto de interés de los accionistas mayoritarios para obtener un financiamiento millonarios mediante la otorgación de los bienes en garantía hipotecaria. Además, incorporaron alegaciones respecto a las causas de acción de avalúo y acción derivativa. Con respecto al avalúo, reiteraron que el 25 de agosto de 2020, el señor Artau Gómez les notificó el *Notice of Merger and Appraisal Rights*. Asimismo, plantearon que la fusión incumplió con el estándar de justicia intrínseca (*entire fairness*), más que al momento de la fusión, los accionistas mayoritarios de HDSI Merger Sub, Inc. eran los mismos que en el Hospital Doctor Susoni. Por ello, adujeron que, al amparo de la Sección 10.13 de la *Ley General de Corporaciones de Puerto Rico*, Ley Núm. 164-2009, 14 LPRA sec. 3743, solicitaron ejercer su derecho a avalúo, por lo que el Dr. Rivera De La Vega y el Dr. Santos Montes solicitaron respectivamente $1,500,000.00 y $2,000,000.00 por el valor de sus acciones.

En lo atinente a la acción derivativa, los peticionarios indicaron en la primera enmienda a la *Demanda* que el propósito de esta causa de acción era impugnar el Acuerdo de Financiamiento. Esto, toda vez que la Junta de Directores del Hospital Doctor Susoni entregó a MPHG el control absoluto de la institución hospitalaria sin nada a cambio y con conocimiento de que la referida corporación quería hipotecar sus bienes y requerir el pago de renta y servicios de consultoría. Por otra parte, añadieron que el señor Artau Gómez, el señor Galarza y la señora Feliciano Vargas incurrieron en una falsa representación, self-dealing, desperdicio deliberado de activos, extralimitación de sus poderes y negligencia crasa al permitir hipotecar el bien inmueble donde opera el hospital para obtener un financiamiento de $187,000,000.00 y una línea de crédito de $10,000,000.00 a favor de MPHG. Por todo lo anterior, los peticionarios solicitaron ordenar la devolución de los gastos incurridos por el Hospital Doctor Susoni en cualquier gestión sobre

la aprobación de la reorganización corporativa y el acuerdo de financiamiento; reformar la gobernanza del Hospital Doctor Susoni, y crear un comité independiente para evaluar la fusión y reorganización corporativa. Igualmente, peticionaron indemnizar al Hospital Doctor Susoni por los daños sufridos a consecuencia de la violación al deber de fiducia de los miembros de la junta de directores. De igual forma, solicitaron declarar la fusión como defectuosa e inoficiosa por omitir información a los accionistas minoritarios.

El 17 de agosto de 2021, el TPI emitió y notificó una *Sentencia Parcial* en la que desestimó la causa de acción sobre acción derivativa por dejar de exponer una reclamación que justificara la concesión de un remedio.[4] El Foro Primario estableció que los peticionarios formularon alegaciones conclusorias y concluyentes sin exponer en qué consistía el alegado conflicto de interés de la junta de directores y el fraude o la ilegalidad de la fusión corporativa. Asimismo, el TPI concluyó que la fusión entre el Hospital Doctor Susoni y HDSI Merger Sub, Inc. constituyó una fusión corta que se realizó conforme a derecho. En vista de lo anterior, resolvió que los peticionarios no tenían derecho a otro remedio a parte del avalúo. En particular, el TPI consignó que la fusión corta eliminó la legitimación de los accionistas minoritarios para la acción derivativa por no formar parte de la corporación, lo que constituía un requisito de la causa de acción.

Al recurrir a este Tribunal de Apelaciones mediante un recurso de apelación, el 4 de noviembre de 2021, un Panel Hermano emitió una *Sentencia* en la que confirmó la *Sentencia Parcial* del 17 de agosto de 2021.[5] Este Foro apelativo indicó que las alegaciones conclusorias de la enmienda a la *Demanda* eran insuficientes para dejar sin efecto la decisión que tomó el 98% de los titulares de las acciones en fusionar el Hospital Doctor Susoni con HDSI Merger Sub, Inc.

---

[4] *Íd.*, Anejo III, págs. 30-57.
[5] *Íd.*, Anejo IV, págs. 58-73.

Posteriormente, el 25 de mayo de 2022, los peticionarios presentaron una *Tercera enmienda a la demanda.*[6] Entre otros, incluyeron que la notificación de fusión y derecho de avalúo era defectuosa por carecer de toda la información material relacionada con la fusión, siendo: (1) los antecedentes y términos de la fusión; (2) el valor de las corporaciones constituyentes, incluyendo el más reciente historial financiero, los prospectos y las proyecciones futuras de las corporaciones constituyentes e información financiera de la corporación adquirente; (3) el proceso adoptado por la junta de directores para aprobar la fusión y sus razones, y (4) la divulgación de potenciales conflictos de interés.

Asimismo, expusieron que el Hospital Doctor Susoni debía cualquier información adicional que les permitiera tomar una decisión en torno al avalúo de sus acciones, incluyendo los estados financieros, avalúo, tasaciones y opiniones de terceros en torno al valor de las acciones. Por ello, solicitaron determinar el justo valor de las acciones y la tasa de interés justa; imponer el pago de intereses desde la fecha en que se hizo efectiva la fusión hasta que se dicte la sentencia y el pago de costas, gastos y honorarios de abogados. Además, los peticionarios se reservaron el derecho de enmendar sus alegaciones para incluir causas de acción adicionales y/o remedios conforme surjan hechos relevantes en el descubrimiento de prueba.

Aproximadamente dos (2) años más tardes, el 15 de agosto de 2024, los peticionarios presentaron una *Moción para que se permita presentar una cuarta enmienda a la demanda.*[7] Mediante esta, sostuvieron que era necesario que la *Demanda* se enmendara, ya que los recurridos incumplieron con su deber de fiducia en la modalidad de divulgación por la exclusión de los activos y descartar el valor de los bienes muebles e inmuebles de la corporación. Los peticionarios

---

[6] *Íd.*, Anejo V, págs. 74-79.
[7] *Íd.*, Anejo IX, págs. 375-401.

particularizaron que la corporación utilizó un *appraisal report* que preparó la firma McCloskey, Mullet & Bonin Appraisers, PSC para valorar sus acciones. Sin embargo, esgrimieron que la antes mencionada firma excluyó tres (3) propiedades de la corporación que ubicaban en la calle Correa, dado que su ejercicio de tasación se limitó a la estructura del hospital, más no a todas las propiedades que posee el Hospital Doctor Susoni. Ante esto, puntualizaron que en la notificación de la fusión no se divulgaron las propiedades excluidas en el *appraisal report* y los valores de unas propiedades que ascienden a $39,000,000.00 y 82,000,000.00, respectivamente. Los peticionarios apuntaron que esta exclusión de los activos era un asunto material para determinar el justo valor de las acciones minoritarias, ya que las mismas se subvaloraron y se les impidió estar informados adecuadamente, previo a solicitar el avalúo. También, expusieron que el *appraisal report* no se preparó con el fin de determinar el valor de las acciones minoritarias ni para valorar la corporación, sino que fue comisionado por el Banco Popular de Puerto Rico para fines de financiamiento. Además, indicaron que se infringió el deber de fiducia en su modalidad de divulgación, más que el remedio estatutario de avalúo era inadecuado, por lo que entendían que procedía concederles los siguientes remedios más amplios:

1) En este caso, el demandado retuvo la cantidad del dinero que según su valoración les corresponde a los accionistas minoritarios. Esto es, $283,451.00 de una acción al Dr. Raúl Rivera De La Vega y $319,930.00 de 1.129 acciones del Dr. Noel Santos. Como parte de los remedios, se solicita al tribunal que ordene la consignación inmediata de ese dinero en el Tribunal de Primera Instancia. Ver <u>Berger v. Pubco Corp.</u>, 976 A.2d 132, 144 (Del. 2009).

2) Se pide que el Tribunal de Primera Instancia nombre una firma para que realice un avalúo de la corporación. Dicho appraisal debe incluir los valores y propiedades excluidas por el demandado.
   a. Además, debe valorarse la corporación como un "going concern". Por eso, cualquier valor adquirido por ser miembro de MPGH, que [acreciente] el valor de las acciones, debe beneficiar a los accionistas minoritarios. Ver <u>In re Orchard Enterprises, Inc. S´holder Litig.</u>, 88 A.3d 1, 50 (Del. Ch. 2014).
   b. El costo del appraisal lo debe asumir el demandado.

3) Ordene a la corporación [tasar] cada una de las propiedades de la corporación inclusive aquellas que

fueron transferidas a MPGH como parte de la corporación inclusive aquellas que fueron transferidas a MPGH como parte de la reorganización.

   a. El real and personal property debe ser incluido en la valoración de las acciones.

   b. El costo de [tasar] lo debe asumir el demandado.

4) Los peticionarios deben permanecer como accionistas en la corporación Hospital Doctor Susoni Incorporado.

   a. Hospital Doctor Susoni Incorporado es miembro de MPGH y, por ende, los demandantes mantienen su derecho a participar, asistir y votar incluyendo en todos los aspectos que fueron incluidos en el Agreement and Plan of Reorganization y otros asuntos. Ver Artículo 7.01 y 7.02 de la LGC-PR.

5) Se impongan intereses sobre el monto del valor de las acciones desde la fecha de la notificación de la fusión hasta que se dicte Sentencia final en el caso. Ver Artículo 10.13 inciso I de la LGC-PR.

6) Se impongan las costas del procedimiento a la parte demandada incluyendo honorarios razonables de abogados y los honorarios y gastos de peritos[.] Ver Artículo 10.13 inciso J de la LGC-PR.

7) Se concedan daños económicos para compensar la pérdida del beneficio económico.

8) Los demandantes se reservan el derecho de enmendar sus alegaciones para incluir causas de acción adicionales y/o remedios conforme surjan hechos relevantes en el proceso de descubrimiento de prueba. En particular, en torno a la divulgación de propiedades y otros activos de la corporación.

Los peticionarios señalaron que la demora en presentar la enmienda a la *Demanda* correspondió a que necesitaban examinar los numerosos documentos financieros y corporativos. Igualmente, puntualizaron que la enmienda no perjudicaba a los recurridos, puesto que debían estar sujetos a las consecuencias de fallar en divulgar los activos de la corporación en el procedimiento de avalúo.

El 15 de octubre de 2024, el Hospital Doctor Susoni presentó una *Oposición a solicitud de cuarta enmienda a la demanda*.[8] Mediante esta, arguyeron que la cuarta solicitud de enmienda a la *Demanda* debía negarse con finalidad inmediata, permanente y con aviso de sanciones económicas severas, ya que era un intento para revivir los dictámenes de desestimación del Foro Primario y del Tribunal de Apelaciones, los cuales advinieron finales, firmes e inapelables, por lo que se obraría en contra de la doctrina de cosa juzgada. Esto, al aducir que los peticionarios intentaron impugnar el

---

[8] *Íd.*, Anejo IX, págs. 375-401.

valor que el Hospital Doctor Susoni les confirió a las acciones que se redimieron por concepto de la fusión corta. A su vez, precisaron que ambos foros judiciales establecieron que la fusión corta se realizó conforme a derecho. Los recurridos reiteraron que el TPI concluyó en la *Sentencia Parcial* del 17 de agosto de 2021 que "se sostiene la validez de la fusión corta y se determina que, conforme al dictamen del Tribunal Supremo de Delaware en el caso Glassman, *supra*, el único remedio que los Demandantes tienen disponible es el derecho de avalúo". Además, manifestaron que los peticionarios no inspeccionaron la tasación, aun cuando estuvo accesible desde agosto de 2020. Asimismo, puntualizaron que no era necesario enmendar la *Demanda* en una cuarta ocasión, ya que las alegaciones versaban sobre una discrepancia entre las partes sobre el método adecuado para valorar el negocio en marcha y las acciones de los peticionarios. Entre otros asuntos, los recurridos alegaron nunca les excluyeron información a los peticionarios, por lo que no existía un nuevo asunto sobre el cual se requería realizar un descubrimiento de prueba adicional. A su vez, concretaron que la única causa de acción pertinente era el derecho de avalúo.

Sometido el asunto ante su consideración, el 22 de octubre de 2024, el TPI emitió una *Orden* en la que determinó que no se permitía la *Cuarta Demanda Enmendada*. El Foro Primario resolvió que, en la etapa de los procedimientos que se encontraba el caso, únicamente se sostenía la causa de acción sobre el avalúo de las acciones.[9]

Insatisfechos con la determinación que el TPI emitió, el 21 de noviembre de 2024, el Dr. Rivera De La Vega y el Dr. Santos Montes presentaron un recurso de *certiorari* ante este Tribunal en el plantearon el siguiente señalamiento de error:

**ERRÓ EL TPI PORQUE DENEGÓ LA CUARTA ENMIENDA A LA DEMANDA.**

---

[9] *Íd.*, Anejo I, pág. 1. Archivada y notificada el 23 de octubre de 2024.

En esencia, los peticionarios esbozaron que el Hospital Doctor Susoni debía estar sujeto a las consecuencias de fallar en divulgar activos en el procedimiento de avalúo para determinar el justo valor de las acciones de la corporación. Asimismo, señalaron que el valor de sus acciones se fundamentó en un avalúo que la firma McCloskey, Mullet & Bonin Appraisers, PSC preparó en el 2018 para fines de crédito comercial, comisionado por el Banco Popular de Puerto Rico. Ante ello, apuntaron que la firma antes mencionada indicó que el *appraisal report* no podía utilizarse por terceras personas ni para un propósito distinto. A su vez, particularizó que en el reporte se estableció que únicamente se valoró el hospital, por lo que se excluyeron tres (3) propiedades de la corporación en el avalúo. En tal virtud, los peticionarios esgrimieron que este reporte no se preparó para determinar el valor de las acciones minoritarias ni de la corporación. Por otro lado, denotaron que en la notificación de la fusión se omitió divulgar e incluir unos activos de $39,000,000.00 y $82,000,000.00 en propiedades muebles e inmuebles que se expusieron en los *appraisal reports* del Metropolitan Hospital Doctor Susoni y del Hospital Pavía en Arecibo, respectivamente. Ante esto, concretaron que sus acciones minoritarias se subvaloraron. Por lo anterior, subrayaron que la *Demanda* debía enmendarse para conformar las alegaciones al descubrimiento de prueba, ya que se necesitaba ampliar los remedios para justiciar la violación de los recurrentes al deber de fiducia por omitir la existencia de los activos y el valor de las propiedades.

Por su parte, el 2 de diciembre de 2024, los recurridos presentaron un *Memorando en oposición a la expedición del auto de certiorari*. En este, reiteraron que la cuarta enmienda a la *Demanda* era un intento por revivir los dictámenes de desestimación emitido tanto por el TPI como por un Panel Hermano de este Tribunal, los cuales advinieron finales, firmes e inapelables. Pues, indicaron que

ambos foros judiciales sostuvieron la validez de la fusión corta. Además, expresaron que no existía necesidad de enmendar la *Demanda* en una cuarta ocasión, ya que se trataba de un desacuerdo sobre cómo se realizó el cálculo del valor de redención, lo cual surgía claramente de la propia tasación. Por otra parte, alegaron que la única causa de acción que era pertinente a este caso era el avalúo que aún se encontraba en litigio. Por ello, manifestaron que no se necesitaba descubrir información adicional que sometería al Hospital Doctor Susoni a los rigores innecesarios de un nuevo litigio sobre la validez de la fusión corta, ya determinada de forma final y firme. Con respecto a la solicitud del remedio de nombrar una firma para realizar un avalúo de la corporación, los recurridos arguyeron que era improcedente, toda vez que notificaron un valor distinto al informado por los peticionarios. Sin embargo, aclararon que dicha disputa era parte del proceso de litigio de avalúo. Así las cosas, el Hospital Doctor Susoni apuntó que, en vista que los peticionarios tenían un remedio adecuado que se está tramitando, no quedarían perjudicados por la denegación de la expedición del auto de *certiorari*.

En atención al error señalados, procedemos a exponer la normativa jurídica aplicable a este recurso.

**II.**

**A.** *Certiorari*

El *certiorari* es el vehículo procesal que permite que un tribunal de mayor jerarquía revise las determinaciones de un tribunal inferior. *Rivera et al., v. Arcos Dorados et al.,* 212 DPR 194, 207 (2023); *Torres González v. Zaragoza Meléndez,* 211 DPR 821, 846-847 (2023); *Caribbean Orthopedics v. Medshape et al.,* 207 DPR 994, 1004 (2021); *McNeill Healthcare LLC v. Municipio De Las Piedras,* 206 DPR 391, 404 (2021); *800 Ponce de León v. AIG,* 205 DPR 163, 174 (2020); *Medina Nazario v. McNeill Healthcare LLC,* 194 DPR 723, 728 (2016); *IG Builders et al. v. BBVAPR,* 185 DPR 307, 337-338 (2012). Mediante

este recurso extraordinario se solicita la corrección de un error cometido por un foro inferior. *Torres González v. Zaragoza Meléndez, supra*, pág. 847. Contrario al recurso de apelación, el foro apelativo posee la facultad discrecional de expedir o denegar el recurso de *certiorari* toda vez que, de ordinario, se tratan de asuntos interlocutorios. *Íd.*

La Regla 52.1 de Procedimiento Civil, 32 LPRA Ap. V, R. 52.1, dispone taxativamente las instancias en las que el Tribunal de Apelaciones posee autoridad para expedir el auto de *certiorari* sobre un asunto interlocutorio civil. *McNeill Healthcare LLC v. Municipio De Las Piedras, supra; Scotiabank de Puerto Rico v. ZAF Corporation, et als.,* 202 DPR 478 (2019). En lo pertinente, si el asunto interlocutorio planteado no se encuentra dentro de las instancias que el ordenamiento jurídico otorga autoridad para intervenir, no se puede atender la controversia. El referido artículo dispone que el foro apelativo intermedio solamente expedirá un recurso de *certiorari* relacionado a una resolución u orden bajo las Reglas 56 y 57 de Procedimiento Civil, *supra*, o a la denegación de una moción de carácter dispositivo. Véase Regla 52.1 de Procedimiento Civil, *supra*, R. 52.1. A su vez, a modo de excepción, este tribunal puede revisar órdenes o resoluciones interlocutorias cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. *Íd.*

El propósito de esta regla es evitar la dilación que causaría la revisión judicial de las controversias que podrían ser planteadas en un recurso de apelación. *Scotiabank de Puerto Rico v. ZAF Corporation, et als., supra*, pág. 486; *800 Ponce de León v. AIG, supra*, pág. 175; *Rivera Figueroa v. Joe's European Shop,* 183 DPR 580, 593-

594 (2011). Ahora bien, "el hecho de que un asunto esté comprendido dentro de las materias susceptibles a revisión no justifica la expedición del auto sin más". *Medina Nazario v. McNeill Healthcare LLC, supra.*

Por otro lado, la Regla 40 del *Reglamento del Tribunal de Apelaciones*, 4 LPRA Ap. XXII-B, R. 40, establece los criterios que debemos considerar en el ejercicio de la facultad discrecional al atender una petición de *certiorari*. A saber, el foro apelativo intermedio debe considerar:

> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.
>
> (C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.
>
> (D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.
>
> (E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

En la eventualidad que el tribunal apelativo deniegue la expedición del auto de *certiorari*, no será necesario que exponga las razones para tal determinación. *Rivera Figueroa v. Joe's European Shop, supra*, pág. 594; *IG Builders et al. v. BBVAPR, supra*, pág. 336. Además, el foro apelativo intermedio no asume jurisdicción sobre el asunto planteado ni dispone del mismo en sus méritos. *Torres González v. Zaragoza Meléndez, supra*, pág. 848; *McNeill Healthcare LLC v. Municipio De Las Piedras, supra*, pág. 405.

### B. Alegaciones enmendadas

La Regla 13.1 de Procedimiento Civil, *supra*, R. 13.1 permite enmendar las alegaciones originales para clarificar o ampliar las reclamaciones o defensas previamente interpuestas. J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, San Juan, Puerto Rico,

Publicaciones JTS, 2011, T. II, pág. 591. A saber, la referida regla dispone lo siguiente:

> Cualquier parte podrá enmendar sus alegaciones en cualquier momento antes de habérsele notificado una alegación responsiva, o si su alegación es de las que no admiten alegación responsiva y el pleito no ha sido señalado para juicio, podrá de igual modo enmendarla en cualquier fecha dentro de los veinte (20) días de haber notificado su alegación. **En cualquier otro caso, las partes podrán enmendar su alegación únicamente con el permiso del tribunal o mediante el consentimiento por escrito de la parte contraria; y el permiso se concederá liberalmente cuando la justicia así lo requiera.** La solicitud de autorización para enmendar las alegaciones deberá estar acompañada de la alegación enmendada en su totalidad. Una parte notificará su contestación a una alegación enmendada dentro del tiempo que le reste para contestar la alegación original o dentro de veinte (20) días de haberle sido notificada la alegación enmendada, cualquiera de estos plazos que sea más largo, a menos que el tribunal de otro modo lo ordene. (Énfasis nuestro).

La autorización para enmendar las alegaciones debe concederse liberalmente, debido a la clara política pública de que los casos se ventilen en sus méritos. *Colón Rivera v. Wyeth Pharm.*, 184 DPR 184, 198 (2012); *SLG Font Bardón v. Mini-Warehouse*, 179 DPR 322, 334 (2010). Empero, resulta importante destacar que la determinación de conceder autorización para enmendar las alegaciones descansa en la amplia discreción del tribunal. *Colón Rivera v. Wyeth Pharm.*, *supra*; *SLG Sierra v. Rodríguez*, 163 DPR 738 (2005); Cuevas Segarra, *op. cit.*, pág. 597. En tal virtud, el máximo foro judicial expresó lo siguiente:

> La liberalidad de la Regla 13.1 para conceder enmiendas no es infinita; está condicionada por un juicioso ejercicio de discreción que ha de ponderar por el momento en que se solicitan, su impacto en la pronta adjudicación de la cuestión litigiosa, la razón o ausencia de ella para la demora e inacción original del promovente de la enmienda, el perjuicio que la misma causaría a la otra parte y hasta la naturaleza y méritos intrínsecos de la defensa que tardíamente se plantea. *Epifanio Vidal Inc. v. Suro*, 103 DPR 793, 796 (1976).

De esta forma, para considerar la aplicabilidad de esta regla, el tribunal debe analizar los siguientes elementos: (1) el impacto del tiempo transcurrido previo a la enmienda; (2) la razón de la demora; (3) el prejuicio a la otra parte, y (4) la procedencia de la enmienda solicitada. *Colón Rivera v. Wyeth Pharm.*, *supra*, pág. 199; *SLG Font*

*Bardón v. Mini-Warehouse, supra*; *SLG Sierra v. Rodríguez, supra*, pág. 748. Entre estos, el criterio rector es el perjuicio. *Colón Rivera v. Wyeth Pharm., supra*; *SLG Font Bardón v. Mini-Warehouse, supra*; J. Cuevas Segarra, *op. cit.*, pág. 594. A tales efectos, la autorización para enmendar la demanda se deniega cuando causa un perjuicio indebido a la otra parte; se plantea en un momento irrazonable, o altera radicalmente el alcance y la naturaleza del caso, convirtiendo la controversia inicial en tangencial. *Íd.*; *SLG Sierra v. Rodríguez, supra*, pág. 749; *SLG Font Bardón v. Mini-Warehouse, supra*, pág. 335; *Torres Cruz v. Municipio de San Juan*, 103 DPR 220 (1975). Por otra parte, se puede denegar la enmienda de las alegaciones por su futilidad, o sea, que no sirve para un propósito legítimo o no tiene mérito legal alguno. J. Cuevas Segarra, *op. cit.*, pág. 595-600. Sin embargo, el cambio de teoría por sí solo no es suficiente para denegar una solicitud de enmienda de las alegaciones. *Íd.*, pág. 594. Además, el paso del tiempo por sí solo no impide que un tribunal admita una enmienda a las alegaciones. *SLG Sierra v. Rodríguez, supra*, pág. 748. Igualmente, el mero hecho de que los procedimientos judiciales se encuentren en una etapa sustancialmente avanzada no impide enmendar la demanda. *Íd.*

En vista de la amplia facultad del foro judicial en permitir enmendar las alegaciones, solamente procede revocar la determinación si se demuestra un claro abuso de discreción o un manifiesto perjuicio. J. Cuevas Segarra, *op. cit.*, pág. 591; *Colón Rivera v. Wyeth Pharm., supra*, pág. 198; *SLG Font Bardón v. Mini-Warehouse, supra*.

### C. Doctrina de la ley del caso

Por otro lado, los derechos y las obligaciones que fueron objeto de una adjudicación judicial mediante un dictamen que advino final y firme, constituyen la ley del caso. *Berkan et al. v. Mead Johnson Nutrition*, 204 DPR 183, 200 (2020); *Mgmt. Adm. Servs. Corp. v. ELA*,

152 DPR 599, 606 (2000); *USI Properties Inc. v. Registrador,* 124 DPR 448, (1989). Pues, "[e]sos derechos y responsabilidades gozan de las características de finalidad y firmeza con arreglo a la doctrina de la 'ley del caso'". *Mgmt. Adm. Servs. Corp. v. ELA, supra.* Por ello, esta doctrina solamente se puede invocar cuando existe una decisión final de la controversia en sus méritos. *Cacho Pérez v. Hatton Garay y otros,* 195 DPR 1 (2016). El propósito de la doctrina de la ley del caso es promover la estabilidad y la certeza del derecho. *Berkan et al. v. Mead Johnson Nutrition, supra.* De esta forma, las partes de un caso puede conducir su proceder por virtud de unas directrices judiciales confiables y certeras. *Íd.* Además, esta doctrina es aplicable a las controversias adjudicadas en un caso, sea por el tribunal de instancia como por un tribunal apelativo. *Íd.,* pág. 201; *Cacho Pérez v. Hatton Garay y otros, supra,* pág. 9. Ahora bien, la doctrina de la ley del caso está al servicio de la justicia, por lo que no es férrea ni de aplicación absoluta. *Mgmt. Adm. Servs. Corp. v. ELA, supra,* pág. 608; *Noriega Rodríguez v. Hernández Colón,* 130 DPR 919, 931 (1992). En tal virtud, solamente en situaciones excepciones, si el tribunal entiende que sus determinaciones previas son erróneas y pueden causar una grave injusticia, puede descartar la aplicación de la doctrina de la ley del caso y resolver de forma justa mediante una norma de derecho distinta. *Berkan et al. v. Mead Johnson Nutrition, supra.*

### D. Derecho de avalúo

En otro extremo, un accionista no tiene la obligación de entrar en un arreglo de fusión o consolidación. C. E. Díaz Olivo, *Tratado sobre Derecho Corporativo,* Colombia, Almaforte, 2018, 2da. ed., pág. 415. En tal virtud, el Artículo 10.13 de la Ley General de Corporaciones, *supra,* sec. 3743, le reconoce el derecho de avalúo a los accionistas que están inconformes con el arreglo corporativo[10] y

---

[10] Un arreglo corporativo bajo el Artículo 10.01 de la *Ley General de Corporaciones, supra,* sec. 3731 (fusión o consolidación de corporaciones domésticas); el Artículo

no desean continuar en la empresa cambiante. *Íd.*; M. Muñoz Rivera, *Ley de Corporaciones de Puerto Rico: Análisis y Comentarios*, San Juan, Ediciones SITUM, 2015, pág. 252. Este derecho consiste en la facultad del accionista disidente en requerir a la corporación la liquidación de su interés mediante el pago del valor de sus acciones. C. E. Díaz Olivo, *op. cit.*

Como norma general, el derecho de avalúo es el único remedio que posee el accionista. *Íd.* No obstante, existen circunstancias limitadas en las que este remedio puede resultar inadecuado, como cuando la transacción se utiliza para la comisión de fraude, falsa representación, conflictos de intereses, despilfarro deliberado de los recursos corporativos y extralimitación palpable. *Íd.* Asimismo, el avalúo puede resultar insuficiente cuando se alega que la solicitud de votos por poder era falsa o engañosa; la junta de directores actuó negligentemente al valorar acciones u otros valores recibidos en la fusión o faltó a su obligación de lealtad. *Íd.* Pues, "[l]a opción concedida bajo el avalúo no debe servir de escudo para una transacción que incluya fraude o injusticia, como sería el valerse de ello para eliminar accionistas minoritarios 'freeze out'". M. Muñoz Rivera, *op cit.* El profesor Díaz Olivo indicó lo siguiente:

> Las posibilidades antes mencionadas tienen en común el incumplimiento o la violación de las obligaciones fiduciarias de los administradores con la corporación y sus accionistas. Al determinar si en efecto ocurrió o no un incumplimiento a tal deber, los tribunales tomarán en cuenta si la fusión se negoció tal y como lo hubieran hecho partes totalmente independientes (*arm's-length transaction*).
>
> En aquellos casos donde el avalúo no resulta ser un remedio adecuado, los tribunales tendrán facultad de desarrollar y conceder remedios tales como el emitir interdictos, rescindir la transacción o compensar por daños.
>
> Si se determina que la fusión se negoció como lo hubieran hecho partes independientes, los tribunales no se involucrarán en un examen de los actos sustantivos de la

---

10.02, *supra*, sec. 3734 (fusión o consolidación de corporaciones domésticas y foráneas); Artículo 10.05, *supra*, sec. 3735 (fusión o consolidación de las corporaciones domésticas y las asociaciones por acciones); Artículo 10.08, *supra*, sec. 3738 (corporaciones domésticas que emiten acciones y corporaciones domésticas que no emiten acciones) y Artículo 10.09, *supra*, sec. 3739 (corporaciones domésticas o foráneas con acciones de capital y sin acciones).

transacción y se concretarán en compensar a cualquier accionista inconforme con el remedio del avalúo. **En el avalúo, el único asunto sujeto a litigación es determinar el valor razonable de la acción al momento de la fusión o consolidación.** (Énfasis nuestro). C. E. Díaz Olivo, *op. cit.*, pág. 416.

En *Glassman v. Unocal*, 777 A.2d 242 (2001), el Tribunal Supremo de Delaware determinó que, en ausencia de evidencia de fraude o ilegalidad en la fusión corta, no se requiere prueba de justicia intrínseca. En tal sentido, el remedio exclusivo que el accionista minoritario disidente tiene disponible es el avalúo para determinar el justo valor de sus acciones basado en los factores relevantes, incluyendo daños y elementos de valor futuro. *Íd.*

Con respecto al ejercicio de la valoración de las acciones, el Artículo 10.13 (E) de la Ley General de Corporaciones, *supra*, sec. 3743, provee para que la corporación o cualquier accionista con derecho al avalúo presente ante el tribunal de instancia una solicitud para determinar el valor de las acciones, dentro de los ciento veinte (120) días siguientes al inicio de la efectividad de la fisión o consolidación. C. E. Díaz Olivo, *op. cit.*, pág. 418. El foro judicial determinará el valor justo de las acciones, en atención a la tasa de interés justa. Véase Artículo 10.13 (H) de la Ley General de Corporaciones, *supra*, sec. 3743.

Esbozada la normativa jurídica, procedemos a aplicarla a los hechos que nos conciernen.

### III.

En el presente caso, el Dr. Rivera De La Vega y el Dr. Santos Montes arguyeron que erró el TPI al no autorizar su solicitud para enmendar por cuarta ocasión la *Demanda* que nos concierne. Esto, al entender que se debía permitir añadir remedios más amplios que su derecho de avalúo como accionistas minoritarios del Hospital Doctor Susoni por estar inconformes con la fusión con HDSI Merger Sub, Inc. Los peticionarios aducen que los recurridos infringieron el

deber de fiducia al omitir información sobre todos los activos del Hospital Doctor Susoni en el reporte de tasación y al existir divergencia entre las partes sobre el valor de las acciones de los peticionarios. Sobre el particular, los recurridos sostuvieron que la *Demanda* no se debía enmendar, toda vez que la controversia planteada por los peticionarios se está dilucidando en el Foro Primario mediante el proceso de avalúo.

Tras evaluar sosegadamente las circunstancias de este caso, determinamos no ejercer nuestra facultad discrecional de expedir el auto de *certiorari* para revisar el error señalado por los peticionarios en sus méritos. No apreciamos que la disposición de la decisión recurrida sea contraria a derecho. Ello, debido a que los peticionarios no establecieron circunstancia alguna que nos permita entrever que el Foro Primario abusó de su amplia discreción o que provocó un manifiesto perjuicio en su contra. Véase *Colón Rivera v. Wyeth Pharm., supra*; *SLG Font Bardón v. Mini-Warehouse*. En primer lugar, las controversias concernientes con los activos del Hospital Doctor Susoni y el valor de las acciones de los peticionarios son, precisamente, objeto del proceso de avalúo que aún se están ventilando en el TPI. Por ello, no se requiere enmendar las alegaciones de la *Demanda* para dilucidar controversias propias del proceso de avalúo, como la determinación del valor razonable de las acciones del Dr. Rivera De La Vega y del Dr. Santos Montes al momento de la fusión de Hospital Doctor Susoni con HDSI Merger Sub, Inc.

En segundo lugar, los asuntos atinentes a la acción derivativa y a que en la fusión se incumplió con el deber de fiducia en la modalidad de divulgación por la exclusión de los activos y descartar el valor de los bienes del Hospital Doctor Susoni fueron objeto de unas determinaciones judiciales que advinieron finales, firmes e inapelables y constituyen la ley del caso. Tras realizar la correspondiente evaluación de las alegaciones, el 17 de agosto de

2021, el TPI emitió una *Sentencia Parcial* en la que desestimó la acción derivativa y determinó que la fusión de Hospital Doctor Susoni con HDSI Merger Sub, Inc. se realizó conforme a derecho. Por lo anterior, el Foro Primario consignó que el avalúo era el único remedio que los peticionarios tenían disponible. Dicho dictamen fue confirmado por un Panel Hermano de este Tribunal mediante una *Sentencia* emitida el 4 de noviembre de 2021. En vista de lo anterior, no apreciamos circunstancia que nos haga considerar error o una grave injusticia en las determinaciones previas para aplicar una normativa jurídica distinta y descartar la doctrina de la ley del caso. Véase *Berkan et al. v. Mead Johnson Nutrition, supra*.

En virtud de lo anterior, se deniega la expedición del auto de *certiorari* solicitado.

### IV.

Por los fundamentos que anteceden, se deniega la expedición del auto de *certiorari*.

Lo acuerda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones