ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL GENERAL DE JUSTICIA
TRIBUNAL DE APELACIONES
**PANEL IV**

| | | |
|---|---|---|
| **POMPINA INVESTMENTS, LLC**<br>DEMANDANTE(S)-APELADA(S)<br><br>V.<br><br>**FEDERICO E. ALBANDOZ BETANCOURT Y OTROS**<br>DEMANDADA(S)-APELANTE(S) | **KLAN202400967** | *APELACIÓN*<br>procedente del Tribunal de Primera Instancia, Sala Superior de **SAN JUAN**<br><br>Caso Núm.<br>**SJ2024CV05223** (904)<br><br>Sobre:<br>Injunction<br>(Entredicho Provisional) |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

*Barresi Ramos*, juez ponente

### S E N T E N C I A

En San Juan, Puerto Rico, hoy día 28 de febrero de 2025.

Comparecen ante este Tribunal de Apelaciones, los señores **FEDERICO ALBANDOZ BETANCOURT, RAFAEL J. ALBANDOZ BETANCOURT** e **HILDA Z. ALBANDOZ BETANCOURT** (señores **ALBANDOZ BETANCOURT**) mediante recurso de *Apelación* incoada el 28 de octubre de 2024. En su escrito, nos solicitan que revisemos la *Sentencia* promulgada el 9 de agosto de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.[1] En dicho fallo, el foro *a quo* declaró no ha lugar las solicitudes de *injunction* estatutario y, en consecuencia, ordenó la desestimación y archivo del caso. Esto es, denegó las causas de acción de todas las partes, incluyendo la *Reconvención* contra **POMPINA INVESTMENTS, LLC** (**POMPINA**) y *Demanda contra Coparte* contra el **ESTADO LIBRE ASOCIADO DE PUERTO RICO** (**ELA**) presentada el 8 de julio de 2024 por los señores **ALBANDOZ BETANCOURT**.[2]

---

[1] Este dictamen judicial fue notificado y archivado en autos el 9 de agosto de 2024. Apéndice de la *Apelación,* págs. 268- 284.
[2] *Íd.* págs. 126- 168.

Número Identificador:  SEN2025_____

Exponemos el trasfondo fáctico y procesal que acompañan a la presente controversia.

- I -

Allá para el 27 de enero de 1961, los señores RAFAEL ALBANDOZ PESCADOR e HILDA ZORAIDA BETANCOURT eran los titulares de la Finca 6242, cuya cabida era unos 996.50 m², situada en Sabana Llana e inscrita al Folio 246 del Tomo 142 de la Quinta Sección del Registro de la Propiedad de San Juan (FINCA ALBANDOZ).

Posteriormente, el 5 de octubre de 1962, el **ELA** interpuso una *Demanda* para expropiar una porción, consistente en 405.33 m², de la FINCA ALBANDOZ. Así, la porción expropiada se convirtió en la Finca 8756 de Sabana Llana. El propósito inicial de la expropiación fue destinar el terreno para ser utilizado como parte del Proyecto Número U-3-1-4, el cual estaba relacionado al ensanche de la Ave. 65 de Infantería.

Empero, el **ELA** nunca destinó la finca expropiada para el antedicho proyecto. Tampoco expuso si lo utilizase para otro proyecto de uso, servicio o destino público. Con ese panorama, a principio de los años sesenta, el **ELA** expropió alrededor de siete (7) fincas contiguas, cuya entrada conecta al área de la Ave. 65 de Infantería.[3]

Entretanto, la finca expropiada y las colindantes de Sabana Llana fueron ostentadas por el **ELA** como *propiedades privadas* sin destinarlas al uso, servicio, ni destino público por las cuales fueron expropiadas. Al punto que, durante aproximadamente cincuenta (50) años, el **ELA** arrendó y destinó las aludidas fincas a personas particulares para llevar a cabo negocios privados con fines lucrativos como la venta y estacionamientos de automóviles.

En ese contexto, desde el año 1967 hasta diciembre de 2016, el **ELA** le concedió al matrimonio compuesto por JUAN EVANGELISTA VILLANUEVA RUIZ y

---

[3] Entre las fincas expropiadas, se encuentran las Fincas de Sabana Llana 272, 445 y 1864.

NEIDA MARTÍNEZ PÉREZ (matrimonio VILLANUEVA-MARTÍNEZ) y/o NUEVA VILLA MOTORS, INC. (VILLA MOTORS) el arrendamiento de las fincas de Sabana Llana para ser utilizadas para "la venta y estacionamiento de vehículos de motor".

El 21 de diciembre de 2016, el **ELA,** como parte vendedora, y el matrimonio VILLANUEVA-MARTÍNEZ, como parte compradora, asintieron la escritura número 130 sobre *Segregación y Compraventa* de las fincas de Sabana Llana ante la notaria Nilsa M. Colón de Reyes. Más tarde, el 9 de agosto de 2019, el matrimonio VILLANUEVA-MARTÍNEZ y **POMPINA** suscribieron la escritura número 13 sobre *Compraventa y Agrupación* ante el notario Carlos M. Lamoutte Navas. El objeto de dicha escritura pública fue la compraventa de las fincas de Sabana Llana.

Desde mediados de 2020 hasta terciados de 2024, los señores **ALBANDOZ BETANCOURT** le arrendaron la FINCA ALBANDOZ a **POMPINA**. Esta última expresó su interés en adquirir la finca e hizo una oferta. No obstante, esta propuesta no fue aceptada por los señores **ALBANDOZ BETANCOURT**.

Pasado algún tiempo, el 10 de junio de 2024, **POMPINA** presentó una *Demanda Jurada, Solicitud de Injunction Preliminar y Permanente y de Sentencia Declaratoria*.[4] En su causa de acción, interpeló que se ordenara la remoción de todos los vehículos estacionados dentro de las colindancias del solar de uso público; el cese y desista permanente de utilizar el solar de uso público como estacionamiento vehicular privado y/o como concesionario de venta de vehículos de motor y/o cualquier otro uso pecuniario privado; y mantener los portones de acceso al solar de uso público abiertos en todo momento. Ese mismo día, se decretó *Orden y Citación* pautando audiencia para el 20 de junio de 2024.[5]

El 17 de junio de 2024, **TF AUTO, LLC** (**TF AUTO**) presentó *Moción Solicitando Desestimación de la Demanda al Amparo de la Regla 10.2 por*

---

[4] Apéndice de la *Apelación*, págs. 1- 29.
[5] *Íd.*, págs. 30- 32.

*Insuficiencia del Diligenciamiento del Emplazamiento*.[6] Argumentó que, en conformidad con la *Ley General de Corporaciones*, la señora Gladys Roena Aponte, secretaria quien recibió el *Emplazamiento*, no tiene autoridad o capacidad para recibir el mismo. A los pocos días, el 19 de junio de 2024, los señores **ALBANDOZ-BETANCOURT** presentaron su *Contestación Jurada y Preliminar a la Demanda* conteniendo sus defensas afirmativas.[7]

El día 20 de junio de 2024, se celebró la audiencia mediante la cual las partes expusieron holgadamente sus planteamientos.[8] Escuchado las argumentaciones, foro apelado concedió plazo para que se enmendara la *Demanda Jurada, Solicitud de Injunction Preliminar y Permanente y de Sentencia Declaratoria* para incluir al **ELA** y a AFG AUTO, LLC (AFG AUTO).

Después, el 24 de junio de 2024, **POMPINA** presentó su *Primera Demanda Jurada Enmendada Solicitud de Injunction Preliminar y Permanente y de Sentencia Declaratoria*.[9] El 8 de julio de 2024, los señores **ALBANDOZ BETANCOURT** presentaron *Contestación a la Demanda Enmendada, Reconvención y Demanda contra Coparte* negando la mayoría de las alegaciones e incluyendo sus defensas afirmativas.[10] De otra parte, el 11 de julio de 2024, el **ELA** presentó *Moción de Desestimación*.[11] Sustentó que **POMPINA** es titular en pleno dominio de la finca 36,418 de Sabana Llana; dicha propiedad no es una finca enclavada; y no tiene derecho a acceso vehicular directo a la Ave. 65 de Infantería dado que tiene dos (2) accesos vehiculares mediante la calle Antonio Valcárcel que conducen a la Ave. 65 de Infantería. Por ende, afirmó que **POMPINA** carece de legitimación activa. Al otro día, el 12 de julio de 2024, **TF AUTO** y AFG AUTO presentaron su *Contestación a Primera Demanda Jurada Enmendada, Solicitud de Injunction Preliminar y Permanente y de Sentencia Declaratoria* negando muchas de las alegaciones

---

[6] *Íd.*, págs. 44- 53.
[7] Apéndice de la *Apelación*, págs. 58- 86.
[8] *Íd.*, págs. 88- 97.
[9] *Íd.*, págs. 101- 112.
[10] Apéndice de la *Apelación*, págs. 126- 168.
[11] *Íd.*, págs. 171- 184.

y concretando sus defensas afirmativas.[12] El 19 de julio de 2024, **POMPINA** presentó *Moción en Solicitud de Desestimación de la Reconvención* exponiendo que la ubicación del portón no es en área colindante ni invade o usurpa la finca 6242.[13] De igual modo, los señores **ALBANDOZ BETANCOURT** no ostentan legitimación activa debido a que la finca 8756 pertenece al **ELA.** El 22 de julio de 2024, **POMPINA** presentó su *Oposición a Moción de Desestimación del Estado Libre Asociado*.[14] Explicó que mantener la finca 8756, de uso público, en una operación comercial de estacionamiento y concesionario (dealer) de autos y haber construido una rampa, sin las autorizaciones o permisos requeridos e impidiéndole acceso a la entrada o salida de la Ave. 65 de Infantería, le ha ocasionado que sufra daños y ha visto su interés propietario adversamente afectado. El 30 de julio de 2024, el **ELA** presentó una *Moción de Desestimación a Demanda Contra Coparte*.[15] Razonó que la reclamación de los señores **ALBANDOZ BETANCOURT** no es una permisible sino una ajena e independiente del pleito ante la consideración del tribunal y ha sido traído al pleito como parte indispensable pero no como codemandado causante de un daño, responsable o parte a la cual se le requiere un acto; y **POMPINA** no procura un remedio en su contra.

El 5 de agosto de 2024, los señores **ALBANDOZ BETANCOURT** presentaron *Moción Solicitando Breve Prórroga para Oponernos a la Solicitud de Desestimación de la Reconvención*.[16] Inmediatamente, el 6 de agosto de 2024, el foro primario prorrumpió *Orden* enunciando: *"Nada que proveer. El asunto está sometido. Estaremos resolviendo en los próximos días".*[17] Ante ello, los señores **ALBANDOZ BETANCOURT** presentaron *Moción Solicitando Reconsideración de la Orden Dictada y Notificada el 6 de agosto de 2024 (Entrada #68)*.[18] En relación con la mencionada reconsideración, el 8 de

---

[12] *Íd.*, págs. 186- 194.
[13] Apéndice de la *Apelación*, págs. 195- 203.
[14] *Íd.*, págs. 205- 221.
[15] *Íd.*, págs. 222- 225.
[16] Apéndice de la *Apelación*, págs. 226- 227.
[17] *Íd.*, págs. 228- 229.
[18] *Íd.*, págs. 230- 233.

agosto de 2024, el tribunal impugnado pronunció *Orden* disponiendo: "[e]l término para replicar de 20 días vence hoy. Además, entendemos que su posible réplica no afecta la determinación que pudiéramos hacer en cuanto a los asuntos interdictales pendientes en esta sala."[19]

Como secuela, el 8 de agosto de 2024, los señores **ALBANDOZ BETANCOURT** presentaron *Oposición a la Solicitud de Desestimación de la Reconvención.*[20] Al día siguiente, el 9 de agosto de 2024, se dictaminó la *Sentencia* apelada.

En desacuerdo con ese proceder, el 24 de agosto de 2024, **POMPINA** presentó *Solicitud de Reconsideración.* Alegó que tener derecho a acceso o la falta de este por el solar donde están erigidas las construcciones sin permisos o se mantenga la actividad con un uso no autorizado no es uno de los requisitos para estar legitimado estatutariamente bajo el Art. 14.1.[21] El 26 de agosto de 2024, los señores **ALBANDOZ BETANCOURT** presentaron *Moción de la Sucesión AB Solicitando Reconsideración de la Sentencia.*[22] Explicaron que sus reclamaciones son permisibles por no surgir de los mismos actos. El 27 de agosto de 2024, se dictaminaron *Resoluciones* declarando no ha lugar los petitorios de reconsideración.[23]

Insatisfechos, el 28 de octubre de 2024, los señores **ALBANDOZ BETANCOURT** acudieron ante este foro intermedio revisor mediante *Apelación* señalando el(los) siguiente(s) error(es):

> Erró el TPI al desestimar la reconvención que la apelante incoó contra la demandante apelada.
>
> Erró el TPI al desestimar la demanda de coparte que la apelante incoó contra el codemandado apelado Estado Libre Asociado de Puerto Rico.
>
> Erró el TPI al dejar de especificar si la desestimación de la reconvención y demanda de coparte de la aquí apelante es con o sin perjuicio.

---

[19] Apéndice de la *Apelación*, pág. 234.
[20] *Íd.*, págs. 235- 255.
[21] *Íd.*, págs. 285- 293.
[22] Apéndice de la *Apelación*, págs. 294- 314.
[23] *Íd.*, págs. 335- 339.

El 31 de octubre de 2024, intimamos *Resolución* concediendo, entre otras cosas, un término de treinta (30) días para presentar su alegato en oposición a **POMPINA Y OTROS**. En cumplimiento, el 27 de noviembre de 2024, **ELA** presentó su *Alegato*. El 5 de diciembre de 2024, **POMPINA** presentó su escrito intitulado *Alegato en Oposición a Recurso de Apelación*.

Evaluado concienzudamente el expediente del caso y contando con el beneficio de la comparecencia de las partes, nos encontramos en posición de adjudicar. Presentamos las normas de derecho pertinentes a las (s) controversia(s) planteada(s).

- II -

- A –*Jurisdicción y Legitimación Activa*

El concepto de *jurisdicción* se refiere al poder o autoridad de un tribunal para considerar y decidir casos y controversias, por lo que la falta de *jurisdicción* de un tribunal incide directamente sobre el poder mismo del foro judicial para adjudicar una controversia.[24] Debido a lo anterior, la ausencia de *jurisdicción* acarrea las siguientes consecuencias:

> (1) no es susceptible de ser subsanada; (2) las partes no pueden voluntariamente conferírsela a un tribunal como tampoco puede éste arrogársela; (3) conlleva la nulidad de los dictámenes emitidos; (4) impone a los tribunales el ineludible deber de auscultar su propia jurisdicción; (5) impone a los tribunales apelativos el deber de examinar la jurisdicción del foro de donde procede el recurso, y (6) puede presentarse en cualquier etapa del procedimiento, a instancia de las partes o por el tribunal *motu proprio*.[25]

Los tribunales debemos ser celosos guardianes de nuestra *jurisdicción*, ya que no poseemos discreción para asumirla donde no la tenemos.[26] "Una sentencia, dictada sin *jurisdicción* por un tribunal, es una sentencia nula en derecho y, por lo tanto, inexistente".[27] "A causa de ello, cuando un tribunal determina que no tiene *jurisdicción* para intervenir en un asunto, procede la inmediata desestimación del recurso apelativo conforme lo ordenado por las

---

[24] *Allied Mgmt. Group, v. Oriental Bank,* 204 DPR 374, 385- 386 (2020).
[25] *González v. Mayagüez Resort & Casino,* 176 DPR 848, 855 (2009).
[26] *Allied Mgmt. Group, v. Oriental Bank, supra,* pág. 386.
[27] *Montañez Rivera v. Policía de PR,* 150 DPR 917, 921 (2000).

leyes y reglamentos para el perfeccionamiento de estos recursos".[28]

De otra parte, la doctrina jurídica de *justiciabilidad* instituye que "[l]a intervención de los tribunales tendrá lugar sólo si existe una controversia genuina entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas".[29] No se consideran controversias justiciables aquellas en que: (1) se procura resolver una cuestión política; (2) una de las partes carece de legitimación activa; (3) hechos posteriores al comienzo del pleito han tornado la controversia en académica; (4) las partes están tratando de obtener una opinión consultiva, o (5) se intenta promover un pleito que no está maduro.[30]

La noción de *legitimación activa* es una manifestación de la doctrina de *justiciabilidad*. Se define como "la capacidad que se le requiere a la parte promovente de una acción para comparecer como litigante ante el tribunal, realizar con eficiencia actos procesales y, de esta forma, obtener una sentencia vinculante".[31] Al exigir que un litigante posea *legitimación activa* los tribunales se aseguran de que el promovente de la acción es uno cuyo interés es de tal índole que con toda probabilidad habrá de proseguir su causa de acción vigorosamente, trayendo a la atención del tribunal todas las cuestiones en controversia.[32] Es norma firmemente establecida que los tribunales existen únicamente para resolver controversias genuinas, surgidas entre partes opuestas que tienen un interés real en obtener un remedio que afecte sus relaciones jurídicas.[33] Para demostrar que posee *legitimación activa*, el promovente tiene que demostrar que: "(1) sufrió un daño claro y palpable; (2) el daño es real, inmediato y preciso, no abstracto o hipotético; (3) existe una relación causal razonable entre el daño y la acción ejercida; y

---

[28] *Allied Mgmt. Group, v. Oriental Bank, supra,* págs. 386- 387.
[29] *Amadeo Ocasio et. al. v. Gobernador et. al.*, 211 DPR 278, 284 (2023); *Rivera Ramos v. García García,* 203 DPR 379, 393 (2019).
[30] *Íd.*
[31] *Hernández, Santa v. Srio. de Hacienda,* 208 DPR 727 (2022)*; Ramos, Méndez v. García García,* 203 DPR 379 (2019).
[32] *Ramos, Méndez v. García García, supra.*
[33] *Hernández, Santa v. Srio. de Hacienda, supra.*

(4) la causa de acción surge al palio de la Constitución o de una ley".[34]

Por esta razón, no puede alegarse *legitimación activa* para cuestionar una ley u ordenanza basado en que se es miembro de la comunidad, cuando se carece de un agravio individualizado y concreto, susceptible de ser reparado mediante el remedio solicitado.[35] En definitiva, "el examen de la *legitimación activa* es un mecanismo usado por los tribunales para delimitar su propia *jurisdicción* y no adentrarse en los dominios de otras ramas de gobierno, y no lanzarse a resolver cuestiones hipotéticas o planteadas dentro de un contexto inadecuado".[36]

La *legitimación* se ha incorporado en nuestro ordenamiento procesal mediante la Regla 15 de las de Procedimiento Civil de 2009.[37] La cual dispone que, "todo pleito se tramitará a nombre de la persona que por ley tenga el derecho que se reclama".[38] Ahora bien, la aludida Regla 15.1 instaura una excepción a la norma general al expresar: "[n]o se desestimará un pleito por razón de no tramitarse a nombre de la persona que por ley tiene el derecho que se reclama hasta que, luego de levantarse la objeción, se haya concedido un tiempo razonable para que la persona con derecho ratifique la radicación del pleito, se una al mismo, o se sustituya en lugar del promovente y tal ratificación, unión o sustitución tendrá el mismo efecto que si el pleito se hubiere incoado por la persona con derecho".[39]

Nuestro más Alto Foro, ha expresado que el propósito de esta norma procesal se enfatiza en:

> "[E]vitar la pérdida de un derecho y la comisión de una injusticia, permitiéndose que, mediante enmienda, se ratifique o se sustituya al titular del derecho y que la enmienda se retrotraiga al inicio del pleito, aun cuando el término prescriptivo ya hubiese vencido al momento de presentarse la enmienda. Esta disposición es cónsona con la política pública que consistentemente hemos adoptado de liberalidad en la interpretación y aplicación de las

---

[34] *Amadeo Ocasio et. al. v. Gobernador et. al.*, *supra*.
[35] *Col. Ópticos de P.R. v. Vani Visual Center*, 124 DPR 559, 563 (1989).
[36] *Hernández Torres v. Hernández Colón et al.*, 131 DPR 593, 598 (1992); *Asoc. Fotoperiodistas v. Rivera Schatz*, 180 DPR 920, 942 (2011).
[37] Regla 15 de las de Procedimiento Civil de 2009 (32 LPRA Ap. V).
[38] *Íd.*
[39] Regla 15.1 de las de Procedimiento Civil de 2009 (32 LPRA Ap. V).

reglas y normas procesales a favor de que los casos se diluciden y resuelvan en los méritos".[40]

Sustancialmente, predica que, no se desestimará la acción judicial, hasta que se hayan evaluado todas las medidas razonables para la tramitación y adjudicación del pleito.

### - B – *Regla 10.2 de las de Procedimiento Civil de 2009*

La Regla 10.2 de las de Procedimiento Civil de 2009 instituye que las defensas de hecho o de derecho contra una reclamación deben presentarse antes de una alegación responsiva[41]. Una moción de *desestimación* bajo la precitada regla es aquella que presenta la parte demandada previo a contestar la demanda solicitando que se desestime la causa de acción presentada en su contra.[42]

Tal pauta dispone como fundamentos para la *desestimación*: (1) falta de *jurisdicción* sobre la materia; (2) falta de *jurisdicción* sobre la persona; (3) insuficiencia del emplazamiento; (4) insuficiencia del diligenciamiento del emplazamiento; (5) dejar de exponer una reclamación que justifique la concesión de un remedio; o (6) dejar de acumular una parte indispensable.[43] La falta de *jurisdicción* constituye "una defensa irrenunciable, que puede ser planteada a petición de parte o el tribunal *motu proprio* y en cualquier etapa de los procedimientos, incluso en fases apelativas".[44]

En ese sentido, el estándar adjudicativo al evaluar una moción de *desestimación* exige que los tribunales tomen como ciertos "todos los hechos bien alegados en la demanda y considerarlos de la forma más favorable para la parte demandante".[45] La obligación de tomar como ciertos únicamente los hechos bien alegados de la demanda supone excluir del análisis las

---

[40] *Allende Pérez v. García*, 150 DPR 892, 905-906 (2000).

[41] 32 LPRA Ap. V, R 10.2.

[42] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta edición, LexisNexis, (2017), págs. 305– 306.

[43] 32 LPRA Ap. V, R. 10.2. *Cobra Acquisitions v. Mun. Yabucoa, et al.,* 210 DR 384, 396 (2022).

[44] *PR Eco Park et al. v. Mun. de Yauco,* 202 DPR 525, 539 (2019).

[45] *Blassino Alvarado v. Reyes Blassino*, 2024 TSPR 93, 214 DPR___.

conclusiones de derecho o las alegaciones redactadas de tal forma que su contenido resulte hipotético.[46]

Como parte de este esquema adjudicativo, los tribunales están llamados a interpretar las alegaciones de la demanda conjuntamente y de forma liberal a favor de la parte demandante, resolviendo toda duda a su favor y concediendo el beneficio de cuanta inferencia sea posible hacer de los hechos bien alegados en la demanda.[47] Ante ello, los tribunales deberán evaluar "si a la luz de la situación más favorable al demandante, y resolviendo toda duda a favor de [e]ste, la demanda es suficiente para constituir una reclamación válida'".[48] A grandes rasgos, se debe determinar si, a base de esos hechos que aceptó como ciertos, la demanda establece una reclamación plausible que justifique la concesión de un remedio. Así, si de este análisis el Tribunal entiende que no se cumple con el estándar de plausibilidad entonces debe desestimar la demanda, pues no debe permitir que proceda una demanda insuficiente bajo el pretexto de que se podrán probar las alegaciones con el descubrimiento de prueba.[49]

De esta forma, solo procederá una moción de *desestimación* cuando una demanda carece de todo mérito, o la parte demandante no demuestre tener derecho a remedio alguno bajo cualesquiera hechos y estado de derecho que pudiera probar en un juicio.[50] Esto es, no "procede la desestimación, si la demanda es susceptible de ser enmendada".[51]

Ahora bien, sabido es que como norma general la *desestimación* constituye una acción drástica que puede conducir a la negativa del derecho a ser escuchado.[52] La política judicial instruye que la *desestimación con efecto*

---

[46] J. A. Cuevas Segarra, *Tratado de Derecho Procesal Civil,* San Juan, Pubs. JTS, 2011, T. II, pág. 529 (citado en *Asoc. Importadores de Cerveza v. E.L.A.,* 171 DPR 140, 149 (2007) (Rebollo López, opinión de conformidad)).

[47] *González Méndez v. Acción Social et al.,* 196 DPR 213, 234 (2016).

[48] *Cruz Pérez v. Roldan Rodríguez et al.,* 206 DPR 261 267 (2021).

[49] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil,* 6ta ed., San Juan, LexisNexis, 2017, pág. 307.

[50] *Cruz Pérez v. Roldan Rodríguez et al., supra; Ortiz Matías et al. v. Mora Development,* 187 DPR 649 (2013).

[51] *Ortiz Matías et al. v. Mora Development, supra.*

[52] *S.L.G. Sierra v. Rodríguez,* 163 DPR 738 (2005).

*de adjudicación en los méritos* debe declararse juiciosamente. Ante ello, los jueces de instancia deben, mediante su juicio valorativo, dirimir si están presentes las circunstancias apremiantes para *desestimar* una demanda con o sin perjuicio. Ciertamente, si al sopesar los factores pertinentes el foro primario determina que la *desestimación* debe ser **sin perjuicio**, tal actuación es válida salvo que se haya incurrido en un abuso de discreción. En ausencia de esto último, los tribunales apelativos no deben intervenir con la decisión de hacer la *desestimación* con o sin perjuicio del Tribunal de Primera Instancia.[53]

### - C – *Reconvención*

La *reconvención* es uno de los mecanismos que una parte tiene disponible para solicitar la concesión de un remedio contra una parte adversa. Se encuentra formulada en las Reglas 11.1 a 11.5 de las de Procedimiento Civil de 2009. Estas reglas reconocen dos (2) tipos: la *compulsoria* y la *permisible*.[54] La Regla 11.1 de las de Procedimiento Civil de 2009 implanta la *reconvención compulsoria* u *obligatoria* como "cualquier reclamación que la parte que la formula tenga contra cualquier parte adversa al momento de notificar dicha alegación, siempre que surja del acto, de la omisión o del evento que motivó la reclamación de la parte adversa y no requiera para su adjudicación la presencia de terceros sobre quienes el tribunal no pueda adquirir jurisdicción". Si no se formula la misma, se entiende renunciada la causa de acción y quedaran totalmente adjudicados los hechos y las reclamaciones que pudiesen surgir de esa transacción o evento.[55] Lo cual implica que da lugar a la defensa de cosa juzgada.

Por otro lado, la citada Regla 11.2 concierta lo siguiente sobre la *reconvención permisible*: "[u]na alegación podrá exponer como reconvención contra una parte adversa cualquier reclamación que no surja del acto, de la

---

[53] VS PR, LLC v. Drift-Wind, 207 DPR 253, 266- 268 (2021).

[54] *Consejo Titulares v. Gómez Estremera, et al.*, 184 DPR 407, 423- 424 (2012).

[55] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 293.

omisión o del evento que motivó la reclamación de dicha parte".[56] En el caso de la *reconvención permisible*, se llama así "no porque sea discrecional admitirla, sino porque si no se formula, no se renuncia; la reclamación no resulta afectada y se puede instar en otro procedimiento. Esta regla persigue la economía procesal."[57]

### - D – *Demanda Contra Coparte*

La Regla 11.6 de las de Procedimiento Civil de 2009, instaura el mecanismo procesal de *demanda contra coparte*, el cual permite que una parte demandada inste una demanda contra otro codemandado siempre y cuando la reclamación surja del mismo acto, omisión o evento que motivó la demanda o reconvención original. Así, esta norma lee:[58]

> Una demanda contra coparte podrá contener cualquier reclamación que surja del acto, de la omisión o del evento que motive la demanda original, o de una reconvención en el pleito, o que esté relacionada con cualquier propiedad que constituya el objeto de la demanda original. La referida demanda contra coparte podrá contener una reclamación al efecto de que la parte contra la cual se dirige es, o puede ser, responsable a la parte demandante contra coparte de la totalidad o de parte de una reclamación en su contra alegada en el pleito.

> La demanda contra coparte podrá presentarse, sin permiso del tribunal, dentro de los treinta (30) días contados a partir de la fecha de presentación de la contestación de todas las partes demandadas. Transcurrido este término, la parte deberá solicitar permiso al tribunal para presentar dicha demanda, previa demostración de justa causa.

Igualmente, esta regla tiene el propósito procesal de proveer un mecanismo para disponer rápida y económicamente en una sola acción de pleitos múltiples que surjan de los mismos hechos, a la vez, que se eviten la multiplicidad de acciones litigiosas. Es por ello, que el Tribunal Supremo ha indicado que, incluso cuando se desestime la acción original de la parte demandante en cuanto a la parte demandada contra el cual se presentó una demanda de co-parte, no necesariamente procede desestimar la demanda de

---

[56] 32 LPRA Ap. V, R. 11.2.
[57] R. Hernández Colón, *Práctica Jurídica de Puerto Rico, Derecho Procesal Civil*, 6ta ed., San Juan, Ed. LexisNexis de Puerto Rico, Inc., 2017, pág. 294.
[58] 32 LPRA Ap. V, R. 11.6.

co-parte presentada contra esa parte demandada.[59] Esta demanda esta limitada a eventos o cuestiones relacionadas con el pleito principal. Ello conlleva que no se pueden formular reclamaciones totalmente independientes del litigio.[60]

- III -

Esencialmente, los señores **ALBANDOZ BETANCOURT** puntean que el tribunal primario se equivocó al desestimar su *Reconvención* contra **POMPINA;** al desestimar su *Demanda contra Coparte* contra el **ELA**; y al dejar de especificar si la desestimación de sus reclamaciones es con o sin perjuicio.

Acentuaron que, para sustentar la desestimación de la *Reconvención* y la *Demanda contra Coparte* no se consignaron determinaciones de hechos ni conclusiones de derecho. Además, indicaron que el tribunal apelado expresó que sus terrenos no colindan con el lote de **POMPINA**. De la misma manera, los señores **ALBANDOZ BETANCOURT** esbozaron que no existe controversia relacionada al hecho de que la finca 6242 de Sabana Llana le pertenece al **ELA** debido a que a principio de la década de los 60, el **ELA** expropió conforme a derecho.[61] Enfatizaron que su argumento va dirigido al reconocimiento del remanente de la finca expropiada, el cual aseguran que les pertenece. En ese sentido, solicitan ser reconocidos como los titulares del remanente colindante con la finca expropiada y así evitar que sus derechos propietarios sean afectados. Asimismo, arguyeron que tres (3) de las cinco (5) fincas agrupadas pertenecientes a **POMPINA** adolecen de nulidad dado que las adquirieron ilegalmente del matrimonio VILLANUEVA-MARTÍNEZ. Agregaron que **POMPINA** está buscando utilizar el remanente como entrada y salida de sus lotes hacia la Calle Antonio Valcarcel. Finalmente, manifestaron que el tribunal de instancia desacertó al no expresar que tipo de desestimación, por

---

[59] *Ramos v. Trans-Oceanic Ins. Co.*, 103 DPR 298, 301- 302 (1975).
[60] R. Hernández Colón, *Práctica Jurídica de Puerto Rico: Derecho Procesal Civil*, 6ta ed., San Juan, LexisNexis, 2017, pág. 295.
[61] Como cuestión de hecho, el **ELA** aparece como titular registral de la finca expropiada. Apéndice de la *Apelación*, págs. 012 022.

lo que, no tienen certeza en si posteriormente pueden o no presentar sus causas de acción.

Por su parte, **POMPINA** arguyó que el tribunal de instancia consignó en la *Sentencia* apelada que la desestimación de la *Reconvención* en su contra fue por falta de legitimación activa estatutaria debido a la ausencia de un interés propietario o personal que pudiera verse adversamente afectado y no ser colindante con el remanente que los señores **ALBANDOZ BETANCOURT** aseguran que les pertenece. Del mismo modo, **POMPINA** acentuó que la finca 8756 es una finca perteneciente al **ELA**, quien consta como titular en el Registro de la Propiedad. Explicó que, el mencionado terreno esta destinado para fines de uso publicó, por lo que el mismo no es susceptible de prescripción adquisitiva. Apuntaló además que, al no ser un colindante directo del área donde colocaron un portón temporero los señores **ALBANDOZ BETANCOURT** no podían sufrir algún daño. Por último, denunció que les corresponde a los señores **ALBANDOZ BETANCOURT** demostrar que no tan solo poseen capacidad legal para demandar, sino también tener un interés propietario legítimo.

Al estudiar detenidamente la totalidad del expediente judicial es preciso señalar que no hallamos prueba o evidencia que nos sustentara que los señores **ALBANDOZ BETANCOURT** posean legitimación activa estatutaria conforme al Art. 14.1 de la Ley 161 de 2009.[62] Toda vez que, luego de la

---

[62] Ley Núm. 161 de 1 de diciembre de 2009, según enmendada, "*Ley para la Reforma del Proceso de Permisos de Puerto Rico*" expresa:
**Artículo 14.1. — Recursos Extraordinarios para Solicitar Revocación de Permisos, Paralización de Obras o Usos No Autorizados, Demolición de Obras**. 23 LPRA § 9024.
La Junta de Planificación, un Municipio Autónomo con Jerarquía de la I a la III, una Entidad Gubernamental Concernida que haya determinado que sus leyes y reglamentos han sido violados, o cualquier persona privada, natural o jurídica, **que tenga un interés propietario o personal que podría verse adversamente afectado, podrá presentar una acción de *injunction*, mandamus, sentencia declaratoria, o cualquier otra acción adecuada para solicitar:** 1) la revocación de una determinación final otorgada, cuya solicitud se haya hecho utilizando información incorrecta o falsa; 2) la paralización de una obra iniciada sin contar con las autorizaciones y permisos correspondientes, o incumpliendo con las disposiciones y condiciones del permiso otorgado; 3) la paralización de un uso no autorizado O de una construcción autorizada mediante permiso, para la cual no se hayan realizado los pagos correspondientes a aranceles, pólizas, arbitrios y sellos; 4) la demolición de obras construidas, que al momento de la presentación del recurso y al momento de adjudicar el mismo no cuenten con permiso de construcción, ya sea porque nunca se obtuvo o porque el mismo ha sido revocado. (énfasis nuestro).

expropiación efectuado por el **ELA** no surge documentación o certificación que logre exhibir fehacientemente que existe algún remanente – colindante a la finca expropiada que les pertenezca a los señores **ALBANDOZ BETANCOURT**.

En consecuencia, los señores **ALBANDOZ BETANCOURT** no demostraron poseer un interés propietario legítimo a reclamar en su *Reconvención*. Ante la ausencia de prueba que apoye un interés propietario, si se evidenció que la finca 8756 es de la titularidad del **ELA** conforme a la certificación del Registro de la Propiedad y esta destinado a uso público.

Respecto a si la desestimación del foro de instancia debe interpretarse con o sin perjuicio, como cuestión de hecho, la Regla 39.2 de las de Procedimiento Civil de 2009 es clara y textualmente precisa:

> (c) Después que la parte demandante haya terminado la presentación de su prueba, la parte demandada, sin renunciar al derecho de ofrecer prueba en caso de que la moción sea declarada "sin lugar", podrá solicitar la desestimación fundándose en que bajo los hechos hasta ese momento probados y la ley, la parte demandante no tiene derecho a la concesión de remedio alguno. El tribunal podrá entonces determinar los hechos y dictar sentencia contra la parte demandante, o podrá negarse a dictar sentencia hasta que toda la prueba haya sido presentada. **A menos que el tribunal lo disponga de otro modo en su orden de desestimación, una desestimación bajo esta Regla 39.2 y cualquier otra desestimación, excepto la que se haya dictado por falta de jurisdicción o por haber omitido acumular una parte indispensable, tienen el efecto de una adjudicación en los méritos.** (énfasis nuestro) [63]

Esto es, cuando el tribunal apelado, en su discreción, resolvió desestimar sus "causas de acción" sin especificar si fue con o sin perjuicio, salvo que se disponga lo contrario se debe entender que es **con** perjuicio. Por consiguiente, colegimos que no se incidió en los errores señalados.

- **IV** -

Por los fundamentos antes expuestos, ***confirmamos*** la *Sentencia* dictada el 9 de agosto de 2024 por el Tribunal de Primera Instancia (TPI), Sala Superior de San Juan.

---

[63] 32 LPRA Ap. V, R. 39.2 (c).

Lo acordó el Tribunal y lo certifica la Secretaría del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones